UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NORC INDUSTRIAL COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 21-192 |

## COMPLAINT

Plaintiff Norca Industrial Company, LLC ("Norca"), by and through counsel, alleges the following for its Complaint against the United States:

### I.   JURISDICTION

1. Norca challenges the U.S. Customs and Border Patrol (CBP) March 22, 2021 Administrative Review (19 U.S.C. § 1517(f)) and November 6, 2020 Final Determination (19 U.S.C. § 1517(c)) in EAPA Consolidated Case No. 7335.  This Court has jurisdiction over Norca's challenge to the CBP's Administrative Review and Final Determination under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1517(g)(1).

### II.   STANDING

2. Norca is the importer of record of the merchandise that is the subject of this action and is a person adversely affected or aggrieved by the actions of CBP within the meaning of 5 U.S.C. § 702.

### III.   TIMELINESS OF THIS ACTION

3. CBP issued its Administrative Review in EAPA Consolidated Case No. 7335 on March 22, 2021.  Norca initiated this action within 30-business days of CBP's Administrative

Review, thereby rendering Norca's action for judicial review timely under 19 U.S.C. § 1517(g)(1).

## IV. STATEMENT OF FACTS

4. On July 6, 1992, the U.S. Department of Commerce ("Commerce") issued an antidumping order on carbon steel butt-weld pipe fittings from the People's Republic of China. *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57 Fed. Reg. 29,702 (Jul. 6, 1992).

5. On November 5, 2019, CBP initiated an investigation against Norca under the Enforce and Protect Act (EAPA) based on allegations by Allied Group, EAPA Consolidated Case No. 7335. Allied that Norca evaded the *Order* by importing into the United States Chinese-origin carbon steel butt weld pipe fittings ("CSBW fittings") that were transshipped through Vietnam to evade the payment of AD duties on CSBW fittings from China under the AD Order.

6. After initiating the investigation, CBP issued a Customs Form 28 (CF28) questionnaire to Norca regarding an entry of finished CSBW fittings and requested corresponding entry and production documentation. Norca complied with the request.

7. On January 9, 2020, CBP conducted an on-site visit of Norca's Vietnamese supplier, BW Fittings Co., Ltd. ("BW Fittings"). Although CBP prepared a report of the visit to BW Fittings' facility in Vietnam, CBP never provided a copy of the report to Norca.

8. On February 10, 2020, CBP issued a notice of investigation and interim measures to Norca, which informed Norca of the investigation, the decision to impose interim measures, and that the period of investigation is from October 15, 2018 through the pendency of the investigation.

9. On February 14, 2020, CBP issued requests for information to Norca and BW

Fittings, requesting information about Norca's entries of CSBW fittings and BW Fittings' production process and sales of CSBW fittings. Norca responded to the RFI on April 14, 2020 and BW Fittings responded on April 20, 2020.

10. CBP issued supplemental RFIs to Norca on April 21, 2020 and May 29, 2020, to which Norca responded on May 5, 2020 and June 22, 2020, respectively.

11. CBP also issued a supplemental RFI to BW Fittings on May 27, 2020, to which BW Fittings responded on June 24, 2020.

12. CBP, through its Trade Remedy & Law Enforcement Directorate ("TRLED"), issued a Final Determination in the EAPA investigation on November 6, 2020, finding that Norca evaded the *Order* because "the rough fittings from China purchased by BW Fittings are covered by AD order A-570-814, and thus, the CSBW fittings sold by BW Fittings to Norca . . . and imported into the United States are subject to AD duties."

13. Norca timely sought administrative review on December 18, 2020, requesting that CBP reverse TRLED's evasion determination and terminate the EAPA investigation for several reasons. First, CBP did not have a lawful basis to initiate the EAPA investigation. Second, even if CBP did have a lawful basis to initiate the investigation, CBP's evasion determination is unfounded because the subject entries of finished carbon steel butt weld pipe fittings imported into the United States by Norca were manufactured in Vietnam and thus not covered by the *Order*. Third, CBP rested its finding of evasion on a fundamental error that "rough" fittings (or "stamping parts") are "unfinished" pipe fittings within the scope of the *Order*, which is contrary to the *Order*. Fourth, CBP's finding that BW Fittings did not purchase seamless pipe was contrary to the record developed during the investigation, which confirms BW Fittings purchased seamless pipe beginning in September 2019 (before CBP received the allegations) and BW Fittings used the

purchased seamless pipe to produce finished CSBW fittings in Vietnam.  Fifth, CBP deprived Norca of due process throughout the investigation by denying access to information that prevented Norca from being able to fully respond to the allegations and correct the record.  Sixth, CBP improperly drew and relied upon adverse inferences against Norca, including drawing and relying upon adverse inferences based on information provided by BW Fittings, despite never providing Norca or BW Fittings with the opportunity to remedy or explain these supposed issues, much less notice of the concerns before the decision.

14. CBP issued the results of its administrative review on March 22, 2021, which affirmed the November 6, 2020 Final Determination.

## VI.     ISSUES PRESENTED AND STATEMENT OF THE CLAIMS

### COUNT I
### Initiation of the EAPA Investigation Was Unlawful

15. Congress authorized CBP to initiate an investigation under EAPA only if CBP determines that information "reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion."  Consideration of Allied's allegations submitted in October 2019 demonstrate CBP had no basis to initiate this investigation, such that the evasion determination should be vacated and investigation should be terminated ab initio.

16. First, Allied alleged that Norca purchased from Alliance Fittings Industry in Malaysia before Commerce determined certain exports from Malaysia circumvented the Order, and subsequently shifted its business to BW Fittings in Vietnam.  But an importer shifting purchases away from producers in a country subject to an anti-circumvention proceeding is hardly "reasonable suspicion" of evasion.  To the contrary, it reflects a reasonable response by an importer to ensure compliance with United States trade laws.

4

17. Second, Allied alleged that during an April 2018 tube show in Germany, Allied officials communicated with HPCO's sales manager who allegedly represented both HPCO and BW Fittings. Assuming a relationship between BW Fittings and HPCO, such an affiliation was not evidence sufficient to provide reasonable suspicion of evasion in November 2019. Many companies—including US companies—have operations that span multiple countries. A Chinese company choosing to establish operations in a third country following imposition of antidumping duties on imports from China is not evasion, it is a foreseeable and legitimate business decision.

18. Third, Allied alleged that it attempted to visit BW Fittings' facility shortly after the April 2018 tube exhibition, but BW Fittings' officials "refused," and allegedly stated there was no production equipment installed at the facility. This too is not evidence providing reasonable suspicion of evasion in November 2019, particularly given Allied's acknowledgement that BW Fittings did not begin shipping product to the United States until November 2019. The reasonable interpretation of Allied's evidence was that BW Fittings was in the process of establishing its facility and installing equipment around the time of the tube exhibition.

19. Fourth, Allied alleged BW Fittings' sales manager visited Allied in May 2018—presumably to seek sales for the new venture—but allegedly did not provide pictures of the facility or equipment, which led Allied to speculate at that time about whether BW Fittings was producing products in Vietnam. A visit to Vietnam in June 2018, however, provided Allied the explanation—namely, that the production equipment was being held up at Vietnam customs. As such, the evidence available to Allied in June 2018 was that BW Fittings was in the process of establishing its production facility in Vietnam.

20. Allied proceeded to wait sixteen months—until October 2019—to file its evidence with CBP. Such stale evidence from a period five months before BW Fittings even began exporting to the United States did not provide CBP with a basis on which to find a reasonable suspicion of evasion in November 2019.

21. CBP also initiated the investigation based on a claimed discrepancy in time sheets submitted by the two importers. There was no discrepancy. The time sheets covered different facilities, locations, time periods and persons. CBP cites no evidence to the contrary, nor did it ever address this fact during the investigation.

22. CBP's initiation determination was thus unsupported by reasonable evidence and was otherwise not in accordance with law.

## COUNT II
### Finished CSBW Fittings from Vietnam Are Not Covered Merchandise

23. CPB contends that the country of origin of finished CSBW fittings produced in Vietnam using "rough or semi-finished pipe fittings from China" would remain China and thus subject to the Order. CBP's determination is contrary to law.

24. Congress authorized CBP to investigate and determine whether "covered merchandise was entered into the customs territory of the United States through evasion." Congress defined "covered merchandise" as "merchandise that is subject to—(A) an antidumping duty order issued under {19 U.S.C. § 1673e} . . . ."

25. The language of an antidumping duty order dictates its scope. As such, merchandise is subject to an antidumping duty order only if it is: (1) the type of merchandise described in the order, and (2) from the particular country or countries covered by the scope of the order as written by Commerce." Merchandise that does not meet both requirements is, by definition, outside the scope of an antidumping order.

26. The *Order* covers "carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form" from the People's Republic of China. Norca, however, did not import finished or unfinished CSBW fittings from China. Norca instead imported CSBW fittings from Vietnam that were processed/produced in Vietnam.

27. Although Commerce, when drafting an antidumping order, can include processing operations performed in third countries, "thereby including those specific production processes occurring in third countries within the order's scope," it did not do so here. The language of the *Order* against certain Chinese CSBW fittings makes no mention of goods produced or processed in other countries.

28. CBP cannot expand the scope of the *Order* to encompass third country production. Congress instead authorized Commerce to conduct anti-circumvention inquiries to determine if "certain types of articles are within the scope of a duty order, even when the articles do not fall within the order's literal scope." Specifically, Congress authorized Commerce to include within the scope of an antidumping duty order merchandise completed or assembled in foreign countries using merchandise subject to a duty order; provided that Commerce makes five enumerated statutorily required findings.

29. While Commerce conducted an anti-circumvention investigation of China-origin unfinished (not "rough") CSBW fittings processed in Thailand and Malaysia, it conducted no such investigation as to Vietnam. Nor are the results of Commerce's anti-circumvention determinations as to Thailand and Malaysia automatically applicable to Vietnam. Commerce's initiation of separate investigations and case law underscore this point.

30.     Further, as the Court of International Trade (and Commerce) recognized, such inquiries "are inherently fact-specific," such that "{e}ach case is highly dependent on the facts on the record, and must be analyzed in light of those specific facts."  Because Commerce has not determined that merchandise completed in Vietnam using subject China-origin inputs is within the scope of the Order, CBP has no basis to extend the scope of the Order as it did to arrive at its evasion determination here.

31.     CBP also did not employ the substantial transformation test to determine whether "rough, unfinished (or semi-finished) CSBW pipe fittings from China that undergo finishing processes . . . in a third country would remain country of origin China upon importation into the United States."  Indeed, CBP effectively concedes it failed to perform any country of origin analysis by stating that it based its determination on its reading of "the scope of the AD order." Because its reading and application of the Order is contrary to law, CBP lacked substantial evidence to support its determination that the country of origin of the finished CSBW fittings produced and imported from Vietnam are China origin instead of Vietnam origin.

32.     There can be no determination of evasion if the imported product under investigation is not merchandise subject to an antidumping duty order.  Finished CSBW fittings imported from Vietnam are, by law, not covered by the Order.  There was no legal basis for CBP to deem the imported products from BW Fittings "covered merchandise."  Lacking the necessary predicate, CBP's evasion determination must be reversed as contrary to law.

## COUNT III
### The *Order* Does Not Cover Rough Fittings

33.     The Order covers "carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form" from China.  CBP contends "rough, unfinished (or semi-finished) CSBW fittings from China that undergo finishing

8

processes (e.g., re-forming, sizing, shot blasting, cleaning, machine beveling, grinding, die stamping or painting processes) in a third country would remain country of origin China upon importation into the United States." CBP's expansive reading of the Order is in error.

34. Manufacturing CSBW fittings involves three production stages. The first stage involves transforming seamless carbon steel pipe "into the rough shape of an elbow, tee, reducer, etc., through a cold- or hot-forming (or forging) process," at which point, "the fittings are considered to be in a rough, 'as formed,' state." During the second stage, the rough fittings "undergo a 'reforming' or 'sizing' operation to ensure that the fitting will match the pipe to which it is to be welded." The third production stage involves "finishing steps," including "shot blasting, or other cleaning, machine beveling, boring and tapering, grinding, die stamping, inspection, and painting."

35. An "unfinished pipe fitting" covered by the Order is not, as CBP contends, a "rough" CSBW pipe fitting. To the contrary, the original investigation confirmed an "unfinished" fitting is "a fitting that has been advanced after forging but which requires at least one more processing step (i.e., shot blasting, machine beveling, boring and tapering, grinding, die stamping, inspecting or painting) to finish the fitting." In other words, a covered "unfinished" CSBW pipe fitting is a pipe fitting that has undergone the first and second stages of production such that only those operations in the third stage remain to be performed.

36. The description of the production steps from the initial investigation that resulted in the Order is consistent with BW Fittings' responses to CBP's requests for information:

> First, rough and stamping part {sic} are the same. The terminology is used interchangeably. They are both created after long pipe is cut into short piece of long pipe and then gone through hot/cold forming process to create rough form of elbow, tee, reducer . . . .

\*   \*   \*

9

> Second, as to the difference between rough and carbon steel butt-weld fittings (CSBW), the later refers to finished carbon steel butt-weld fittings. In terms of production process, the difference is that rough products undergo processing steps, including: (i) beveling; (ii) sizing; (iii) grinding; (iv) shot blasting; (v) heat treatment; and (vi) painting to become finished CSBW.
>
> * * *
>
> Third, as to differences between rough and semi-finished CSBW, the later has degree of finish better than the former. In terms of production process, rough products must undergo the following steps to become semi-finished CSBW: (i) beveling; (ii) sizing; (iii) grinding; and (iv) shot blasting.

37. As BW Fittings confirmed, rough (or stamping) parts are the result of the first production step—they still must undergo the second and third stages of production. Consistent with the Commission's description of subject merchandise during the initial investigation, and the understanding of Commerce in administering the Order, the rough parts BW Fittings imported from China are not "unfinished" CSBW fittings that are subject to the Order.

38. BW Fittings stated in its response to the RFI that all finished CSBW fittings that it exported to the United States "underwent at least" the second and third production steps in Vietnam. CBP identifies no facts to the contrary, nor could it.

39. While BW Fittings did not have the equipment to perform hot sizing until it acquired two electric furnaces (clearing Vietnam customs around May 31, 2019) and began using it in production on June 1, 2019, record evidence demonstrates it had the capability to perform cool resizing throughout the period of investigation. For example, the record confirms BW Fittings acquired two elbow forming machines, which cleared Vietnam customs around July 3, 2018 (bill of lading no. KLS1801130), and began using that equipment during production on August 1, 2018—all well before the period of investigation. Likewise, BW Fittings acquired

two four-column hydraulic presses (Production Range: 1/2inch to 12 inch), which cleared Vietnam customs around July 3, 2018 (bill of lading no. TSNCB18005172) and began using that equipment during production on September 1, 2018—again, before the period of investigation. Substantial evidence—indeed, unrebutted evidence—thus confirms that BW Fittings had the capability and capacity to perform, and in fact did perform, the second and third stages of production throughout the period of investigation.

40. Based on the language of the Order, as understood during the original investigation, "rough" fittings (or "stamping parts") are not "unfinished" CSBW fittings within the scope of the Order. Because CPB's evasion determination rests on this fundamental error, its determination that finished CSBW fittings produced in Vietnam using Chinse-origin rough parts is not supported by substantial evidence and is not in accordance with law.

## COUNT IV
**CBP Irrationally Concluded It Could Not Confirm Purchases of Seamless Pipe**

41. CBP contends that it "did not identify any raw material documentation to support the purchase of any seamless pipe (or steel plate) by BW Fittings during the POI." CBP's position is irrational.

42. During the investigation, Norca submitted site visit reports and videos demonstrating that BW Fittings had the capacity and capability to transform—and, in fact, was transforming—seamless pipe into finished CSBW fittings at its facility in Vietnam. CBP neither reference these first-hand accounts in its determination, nor challenges the veracity of the accounts. Nor could it given the site visit reports Norca submitted are consistent with CBP's own observations. During the January 9, 2020 site visit to BW Fittings' facility in Vietnam, CBP confirmed that BW Fittings was using seamless pipe to produce its fittings in Vietnam. Indeed, the CBP officials who visited acknowledged that BW Fittings had production equipment and

employees to produce fittings in Vietnam and was in fact doing so. These facts alone render CBP's finding and determination irrational.

43. Contrary to CBP's contention, moreover, materials Norca and BW Fittings produced in response to CBP's requests for information confirm that BW Fittings imported seamless pipe to produce finished CSBW fittings in Vietnam. Norca, for example, submitted bills of lading, Vietnam customs declarations, material receiving documentation, and test reports that evidence BW Fittings' importation of seamless pipe during the POI.

44. The substantial increase in electric and water utility usage—particularly from November 2019 through January 2020—coincides with BW Fittings' acquisition and use during production of the electric furnaces and bend saws, and the purchase and transformation of seamless pipe into finished CSBW fittings in Vietnam. This too confirms that BW Fittings imported seamless pipe to produce finished CSBW fittings in Vietnam during the POI.

45. During the investigation, moreover, CBP received photographs and videos from a November 2019 site visit of BW Fittings' Vietnam facility. CBP, however, did not reference receiving such information in its determination, nor was Norca made aware by CBP that it requested information from the third party and actually obtained the information during the EAPA investigation.

46. CBP's failure to address, let alone acknowledge, the third-party materials in its determination is inexplicable. At the core of CBP's evasion determination is its rejection that that BW Fittings purchased long pipe. CBP made this finding because it "concluded that the numeric descriptions on raw material invoices were actually for rough fittings . . . ." The third-party materials CBP received during the investigation—*i.e.*, record evidence—eviscerates CBP's findings and conclusions. The metadata and file properties confirm the third-party photographs

12

were taken: (a) on November 13, 2019, and (b) at a location, as confirmed by the latitude and longitude coordinates, in the Long Giang Industrial Park, Tan Lap 1 Commune, Tan Phuoc District, Tien Giang, Vietnam where BW Fittings' facility is located.  As such, they are of unquestioned reliability.

47. The record evidence shows long pipe in BW Fittings' facility, which is contrary to TRLED's assertion that it could not confirm that "raw material purchases consisted of seamless pipe as claimed by BW Fittings."



48. Record evidence further shows cut seamless pipe of varying dimensions, again confirming BW Fittings' statements that it purchased and used seamless pipe to produce in Vietnam finsihed carbon steel butt-weld pipe fittings for Norca.





49.     The record evidence also includes pictures of tags on seamless pipe at BW Fittings' Vietnam facility with "numeric descriptions," *e.g.*, 219mm\*9.8mm\*1090mm.







50.     These photographs—of which Norca was unaware and that CBP ignored—confirm that the numeric description on the raw material purchase orders BW Fittings produced correspond to seamless pipe, not rough fittings.  In other words, the record evidence contradicts CBP's conclusion that "the numeric descriptions on raw material invoices were actually for rough fittings."

51.     The record does not support CBP's findings or evasion determination.  The documents BW Fittings produced during the investigation—and that CBP obtained from a third-party but ignored—are consistent with CBP's own on-site observations, and demonstrate that BW Fittings purchased seamless pipe beginning in September 2019—before CBP received Allied's allegations—and used that seamless pipe to produce finished CSBW fittings in Vietnam.  CBP's conclusion to the contrary must be reversed as it is not supported by substantial evidence.

## COUNT V
## CBP Deprived Norca of Due Process

52.     An importer participating in an administrative proceeding has a due process right to "notice and a meaningful opportunity to be heard."  Due process requires notice of the proposed official action, access to the evidence supporting that action, and an opportunity to rebut that

evidence. CBP's administration of and conduct during the investigatory proceedings deprived Norca of due process.

53. Norca's lack of access to the business confidential version of Allied's allegations and all other initiating documents meant that Norca could not fully respond to the allegations and claimed deficiencies found within the record. This placed Norca at an unfair disadvantage as it does not know upon what information CBP relied when making the affirmative finding of evasion.

54. Also depriving Norca of due process was CBP's failure to notify Norca that it received information from a third-party, hiding this evidence, and making findings contradicted by the evidence.

55. Further depriving Norca of due process was CBP's application of adverse inferences against Norca based on BW Fittings' responses—and the deficiencies and issues CBP identified in certain responses. Regulations permit CBP to make adverse inferences during an EAPA investigation only under limited circumstances: if a party to the investigation "fails to cooperate and comply to the best of its ability with a request for information made by CBP . . . ." There was no such finding here against BW Fittings or Norca. To the contrary, CBP's determination reflects that both parties cooperated and responded timely to CBP's requests for information and supplemental requests for information. Nor did CBP find that either BW Fittings or Norca failed to comply to the best of their respective abilities. As such, the necessary predicate for applying adverse inferences against BW Fittings or Norca is absent.

56. Yet, applying adverse inferences is what CBP did in making its determination. CBP specifically relied on supposed deficient responses by BW Fittings to justify application of adverse inferences to make an affirmative finding of evasion by Norca. CBP, however, did not notify Norca or BW Fittings of what CBP deemed insufficient or deficient responses or provide either

Norca or BW Fittings with an opportunity to redress any such evidentiary issues. In short, CBP faults BW Fittings for not answering a question that CBP never asked.

57. In drawing adverse inferences, CBP violated Norca's right to a meaningful and fair proceeding. Furthermore, CBP's failure to provide Norca (or BW Fittings) with notice of what CBP considered to be deficient responses—and an opportunity to remedy or explain the deficiency—renders CBP's evasion determination unsupported by substantial evidence and otherwise contrary to law.

## COUNT VI
## CBP Improperly and Unreasonably Draws Adverse Inferences

58. CBP identifies various "discrepancies and issues with the information on the record of this investigation" arising from certain narrative responses and documents BW Fittings provided CBP during the investigation.

59. As noted, CBP cannot draw adverse inferences to support the evasion determination because CBP did not provide BW Fittings an opportunity to remedy or explain the issues CBP identified.

60. Regardless, the inferences CBP draws from the alleged discrepancies are unreasonable and unsupported by substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. hold that the Administrative Review and Final Determination are not supported by substantial evidence and are otherwise not in accordance with law;

2. order CBP to terminate the EAPA investigation; and

3. provide such further relief as this Court deems just and proper.

Dated: April 27, 2021

Respectfully submitted,

/s/ Jeremy W. Dutra

Peter Koenig
Jeremy W. Dutra
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 626-6600
peter.koenig@squirepb.com
jeremy.dutra@squirepb.com

*Counsel to Norca Industrial Company, LLC*