**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: The Honorable Jennifer Choe-Groves, Judge**

| | |
|---|---|
| NORCA INDUSTRIAL COMPANY, LLC, | |
|                 Plaintiff, | |
|   and | |
| INTERNATIONAL PIPING & PROCUREMENT GROUP, LP, | Consol. Court No. 21-00192 |
|                 Consolidated Plaintiff, | |
|   v. | |
| UNITED STATES, | |
|                 Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORCA INDUSTRIAL COMPANY, LLC'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Peter Koenig
peter.koenig@squirepb.com
Jeremy W. Dutra
jeremy.dutra@squirepb.com
Christopher D. Clark
christopher.clark@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Counsel to Plaintiff*
*Norca Industrial Company, LLC*

August 20, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

WORD COUNT CERTIFICATE OF COMPLIANCE ........................................... v

I.   INTRODUCTION ............................................................................... 1

II.  RULE 56.2 STATEMENT ................................................................... 3

     A.   The Administrative Determination Under Review ................................ 3

     B.   Statement of Issues Presented ................................................................ 3

III. STATEMENT OF FACTS .................................................................... 3

IV.  ARGUMENT ...................................................................................... 5

     A.   CBP's evasion determination is contrary to law because Norca did not
          enter "covered merchandise" into the United States through evasion. .................. 6

          1.   The *Order* does not cover finished CSBW fittings from Vietnam. ............ 7

          2.   The *Order* does not cover finished CSBW fittings manufactured in
               Vietnam using rough/stamping parts from China. .................................. 10

     B.   CBP's evasion determination is arbitrary and capricious because it based
          that determination on a finding that not only is unsupported by the
          requisite substantial evidence considering the record as whole, but is
          contradicted by evidence CBP obtained during the investigation. ...................... 13

          1.   CBP's own attaché report confirms that BW Fittings purchased
               and used seamless pipe in its production of finished CSBW
               fittings. ...................................................................................... 14

          2.   Contrary to CBP's claim, documentss Norca and BW Fittings
               produced during the investigation confirm that BW Fittings
               imported seamless pipe to produce finished CSBW fittings in
               Vietnam; there is no evidence to the contrary. ......................................... 15

     C.   CBP violated the statutory substantial evidence requirement that its
          decision consider the record as a whole, by ignoring evidence that
          contradicts CBP's findings on which it based its evasion determination. ............ 19

          1.   CBP unlawfully excluded exculpatory information from the
               administrative record. .................................................................... 19

          2.   The photographs submitted by a third party to CBP during the
               investigation that CBP unlawfully did not include in the
               administrative record contradict CBPs finding that BW Fittings did
               not purchase seamless pipe. .............................................................. 21

     D.   CBP unlawfully deprived Norca of due process. .................................... 24

          1.   CBP failed to provide Norca with access to records during the
               investigation. ............................................................................... 25

          2.   CBP deprived Norca of due process by basing the final

determination on new allegations of perceived document discrepancies that CBP never provided an opportunity to explain. .......... 25

E.    CBP engages in unlawful speculation unsupported by the requisite substantial evidence to unreasonably draw adverse inferences against Norca based on perceived inconsistencies in documents and information BW Fittings provided during the investigation. ................................................... 27

V.    CONCLUSION ........................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)..............................................6, 15

*Bell Supply Co., LLC v. United States*, 179 F. Supp. 3d 1082 (CIT 2016)......................................6

*Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311 (CIT 2015)........................................7

*Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197 (1938).........................................6

*Deacero S.A. de C.V. v. United States* 817 F.3d 1332 (Fed. Cir. 2016) ........................................8

*Deacero S.A. de C.V. v. United States*, 942 F. Supp. 2d 132 (CIT 2013).......................................9

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) .................................6, 7, 10

*Eckstrom Indus. v. United States*, 254 F.3d 1068 (Fed. Cir. 2001) .............................................10

*Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778 (Fed. Cir. 1995) .................10

*Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*, 28 CIT 1185 (2004) ..................27

*Hyundai Hevy Indus. Co. v. United States*, 485 F.Supp.3d 1380 (CIT 2008) ..............................18

*Kemira Fibres Oy v. United States*, 858 F. Supp. 229 (CIT 1994)................................................25

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) .........................................18

*Novosteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002) ..................................................28

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012)..............................25

*Royal Brush Mfg. v. United States*, 483 F. Supp. 3d 1294 (CIT 2020) .............................25, 26, 28

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005)..............................................6

*Ta Chen Stainless Steel Pipe v. United States*, 23 CIT 804 (1999) .............................................27

*Yangzhou Bestpak Gifts & Crafts v. United States*, 716 F.3d 1370 (Fed. Cir. 2013)..................28

**Statutes**

19 U.S.C. § 1517(g) ........................................................................................................................3

19 U.S.C. § 1517(g)(2) ...................................................................................................................5

19 U.S.C. § 1673..............................................................................................................................6

19 U.S.C. § 1673a(b)(3)(A) .............................................................................................................6

19 U.S.C. § 1673e(a)(2) ...................................................................................................................6

19 U.S.C. § 1677(25).......................................................................................................................6

19 U.S.C. § 1677b(a)(3)....................................................................................................................6

19 U.S.C. § 1677j..............................................................................................................................6

19 U.S.C. § 1677j(b).........................................................................................................................8

**Regulations**

19 C.F.R. § 351.202(b)(5)................................................................................................................6

19 C.F.R. § 351.202(b)(6)................................................................................................................6

19 C.F.R. § 351.225(k)(1)..........................................................................................................10, 11

19 C.F.R. § 165.4(e).......................................................................................................................25

19 C.F.R. § 165.6(a).......................................................................................................................26

19 C.F.R § 165.16............................................................................................................................9

**Administrative Decisions**

*Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57 Fed. Reg. 29,702 (Dept. of Commerce Jul. 6, 1992) .........................1, 7, 10

*Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 84 FR 29164 (Dept. of Commerce, June 21, 2019) .......................................................................8

*Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China; Affirmative Final Determination of Circumvention of Antidumping Duty Order*, 59 FR 15155 (Dept. of Commerce March 31, 1994) ................................................................8

*Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order*, 84 FR 2813, 2815 (Dept. of Commerce Feb. 8, 2019) .........................................7

**Other Authorities**

*Carbon Steel Butt-Weld Pipe Fittings From Brazil, China, Japan, Taiwan, and Thailand*, Inv. Nos. 731-TA-308-310, 520, and 521 (Second Review), USITC Pub. 3809 (October 2005) ...........................................................................................................................11

*Certain Carbon Steel Butt Weld Pipe Fittings from China and Thailand*, Inv. Nos. 731 TA 520 and 521 (Final), USITC Pub. 2528 (June 1992) ............................................11

Memorandum, *Issues and Decision Memorandum for the Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China* (Dept. of Commerce June 14, 2019) ...............................11

**WORD COUNT CERTIFICATE OF COMPLIANCE**

This brief has been prepared utilizing Microsoft Word with 12-point Times New Roman font. In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2B(1) of the Chambers Procedures, undersigned certifies that this brief contains 9,100 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Date: August 20, 2021

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra

*Counsel to Plaintiff*
*Norca Industrial Company, LLC*

## I.    INTRODUCTION

The United States Customs and Border Protection ("CBP") initiated an Enforce and Protect Act ("EAPA") investigation against Norca Industrial Company, LLC ("Norca") in November 2019.  CBP initiated the investigation based on a frivolous allegation from Allied Group ("Allied"), a competing importer who previously was found to have circumvented the U.S. Department of Commerce's ("Commerce") antidumping duty order A-570-814 on certain carbon steel butt-weld pipe fittings ("CSBW fittings") from the People's Republic of China ("*Order*").  Allied alleged that Norca was involved in a scheme to evade the *Order* by transshipping China-origin CSBW fittings through Vietnam.[1]  CBP's finding of evasion, however, is unsupported by substantial evidence, is arbitrary and capricious, and otherwise not in accordance with law, this Court's review standard.

Congress only authorized CBP to initiate an EAPA investigation if there is "reasonable suspicion" of evasion of an antidumping or countervailing duty order.  Even if CBP suspected in November 2019 that the CSBW fittings Norca purchased from Vietnam were produced from rough or stamping parts from China, CBP could not establish the necessary predicate for initiating an EAPA investigation.  The *Order* does not cover third-country processing nor does it cover rough or stamping parts as opposed to unfinished or finished CSBW fittings.  CBP has no legal authority to expand the scope of the *Order*.  That authority lies solely with Commerce.  To date, there is no ruling by Commerce that CSBW fittings produced in Vietnam using rough or stamping parts produced in China are included within the scope of the *Order*.  No Commerce scope or circumvention ruling covers that specific situation.  The text of the *Order* thus renders

---

[1] *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57 Fed. Reg. 29,702 (Dept. of Commerce Jul. 6, 1992) ("*Order*").

CBP's November 6, 2020 final determination, as affirmed by the March 22, 2021 administrative review, contrary to law.

Notwithstanding this fundamental and fatal defect in the EAPA investigation, review of the administrative record confirms CBP lacks any evidence, let alone the statutorily required substantial evidence, that Norca engaged in evasion at any time during the period of investigation ("POI"). CBP's March 22, 2021 administrative review, which affirmed the finding of evasion from the November 6, 2020 determination, lacks substantial evidence, and cannot be reconciled with the evidence previously provided during the investigation that demonstrated no evasion occurred. Further undermining the legitimacy of CBP's determination is the fact that CBP withheld evidence from Norca that it solicited from a third party. CBP never revealed this evidence to Norca, nor did it address the evidence in its November 6, 2020 evasion determination or March 22, 2021 administrative review; information that contradicts the findings on which CBP based its evasion determination. CBP's deliberate unwillingness to address the exculpatory information it received from the third party is the hallmark of arbitrary and capricious action, also unlawful under this Court's review standard.

CBP, in an apparent effort to obfuscate a determination contrary to law and unsupported (indeed, contradicted) by substantial evidence, CBP recited for the first time a list of perceived discrepancies in the responses it received to its requests for information from Norca and BW Fittings Co., Ltd. ("BW Fittings"). Despite Norca's and BW Fittings' demonstrated willingness to cooperate and answer any questions throughout the investigation, CBP engaged in unsupported speculation, rather than seek the legally required clarification. CBP's reliance on such speculation renders its evasion determination arbitrary, capricious, and unsupported by the requisite substantial evidence.

## II.     RULE 56.2 STATEMENT

### A.     The Administrative Determination Under Review

Norca challenges CBP's November 6, 2020 Final Determination of evasion as affirmed

by the March 22, 2021 Administrative Review.  CBP's determination that Norca evaded the

*Order* is unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law.  This Court should reverse the Final Determination (and

the Administrative Review affirming the Final Determination) under its review standard.[2]

### B.     Statement of Issues Presented

1.     Whether CBP's evasion determination is unsupported by substantial evidence,

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

2.     Whether CBP violated Norca's due process rights by failing to provide Norca with

record evidence and a meaningful opportunity to respond to CBP's unstated speculation about perceived

discrepancies in materials provided to CBP in response to CBP requests for information.

## III.     STATEMENT OF FACTS

On November 5, 2019, CBP initiated the EAPA investigation, which arose from Allied's

allegations that Norca evaded the *Order* by importing into the United States Chinese-origin

CSBW fittings that were transshipped through Vietnam.[3]

After initiating the investigation, CBP issued a Customs Form 28 (CF28) questionnaire to

Norca regarding an entry of finished CSBW fittings and requested corresponding entry and

---

[2] 19 U.S.C. § 1517(g).

[3] P.R. 1 at PR023453.

production documentation.[4]  On January 9, 2020, CBP conducted an on-site visit of BW Fitting's facility in Vietnam.[5]

On February 10, 2020, CBP issued a notice of investigation and interim measures to Norca, which informed Norca of the investigation, the decision to impose interim measures, and that the period of investigation is from October 15, 2018 through the pendency of the investigation (*i.e.*, November 6, 2020).[6]

On February 14, 2020, CBP issued requests for information to Norca and BW Fittings, requesting information about Norca's entries of CSBW fittings and BW Fittings' production process and sales of CSBW fittings.  Norca responded to the RFI on April 14, 2020 and BW Fittings responded on April 20, 2020.  CBP issued supplemental RFIs to Norca on April 21, 2020 and May 29, 2020, to which Norca responded on May 5, 2020 and June 22, 2020, respectively.  CBP also issued a supplemental RFI to BW Fittings on May 27, 2020, to which BW Fittings responded on June 24, 2020.[7]

Following its investigation, CBP determined that Norca evaded the *Order* because "the rough fittings from China purchased by BW Fittings are covered by that Commerce antidumping duty order, A-570-814, and thus, the CSBW fittings sold by BW Fittings to Norca and imported into the United States are subject to antidumping duties."[8]

---

[4] *Id.*

[5] *Id.* at PR023454.

[6] *Id.*

[7] *Id.* at PR023455.

[8] *Id.* at PR023461.

CBP published its determination on November 6, 2020.  On December 18, 2020, Norca filed its request for administrative review.[9]

Thereafter, on January 11, 2021, Norca became aware of certain exculpatory information that had been provided to CBP during the investigation period, per CBP's request, but which CBP did not provide to Norca or even address in its Final Determination or include in the record. To wit, CBP sent an RFI to a third party, who answered on or about June 17, 2020.  In response to the RFI, the third party submitted to eapallegations@cbp.dhs.gov photographs and videos from a November 2019 site visit of BW Fittings' Vietnam facility.  CBP never referenced receiving such information in its Final Determination, nor was Norca made aware by CBP that it requested information from the third party or that the third party submitted information during the EAPA investigation.

On January 15, 2021, upon fortuitously learning this information from others, not CBP, Norca submitted supplemental comments to address that exculpatory evidence that CBP hid from Norca.[10]  On March 22, 2021, CBP affirmed the November 6, 2020 evasion determination, and rejected Norca's supplemental comments as untimely.[11]

IV.  **ARGUMENT**

Judicial review in an EAPA investigation involves "whether CBP's determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[12]  CBP abuses its discretion when it bases its decision "on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or

---

[9] P.R. 370.

[10] P.R. 375.

[11] P.R. 379 at PR023559.

[12] 19 U.S.C. § 1517(g)(2).

represents an unreasonable judgment in weighing relevant factors."[13]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  To determine if substantial evidence exists, the Court must review the record in its entirety, including all evidence that "fairly detracts from the substantiality of the evidence."[15]

CBP's evasion determination, as affirmed by the administrative review, falls short of the Court's review standard.  It must be reversed.

A.  **CBP's evasion determination is contrary to law because Norca did not enter "covered merchandise" into the United States through evasion.**

CBP contends that the country of origin of finished CSBW fittings produced in Vietnam using "rough or semi-finished pipe fittings from China" is China and thus subject to the *Order*.[16]  CBP's determination is contrary to law.

The language of a Commerce antidumping duty order dictates its scope.[17]  As such, merchandise is subject to a Commerce antidumping duty order only if it is: (1) the type of merchandise described in the order, and (2) from the particular country or countries covered by the scope of the order as written by Commerce."[18]  Merchandise that does not meet both requirements is, by definition, outside the scope of the Commerce antidumping order.  Here, the

---

[13] *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

[14] *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938).

[15] *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

[16] P.R. 368 at PR023456.

[17] *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002); *see also id.* at 1096-97 ("Although the petition and the investigation proceedings may aid in Commerce's interpretation of the final order, the order itself reflects the decision that has been made as to which merchandise is within the final scope of the investigation and is subject to the order").

[18] *Bell Supply Co., LLC v. United States*, 179 F. Supp. 3d 1082, 1091-92 (CIT 2016); *see also* 19 U.S.C. §§ 1673, 1673a(b)(3)(A); 1673e(a)(2), 1677(25), 1677b(a)(3), 1677j; 19 C.F.R. §§ 351.202(b)(5), (6); *Duferco*, 296 F.3d at 1096.

merchandise Norca imported does not meet either requirement. Lacking this necessary predicate, CBP never should have initiated the EAPA investigation, let alone render a final determination of evasion.

> 1. The *Order* does not cover finished CSBW fittings from Vietnam.

Commerce's *Order* covers "carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form" from the People's Republic of China.[19] Norca, however, did not import finished or unfinished CSBW fittings from <u>China</u>. Norca instead imported finished CSBW fittings from <u>Vietnam</u> that were produced in <u>Vietnam</u> using either seamless pipe or rough/stamping parts from China.

Although Commerce, when drafting an antidumping duty order, can include processing operations performed in third countries, "thereby including those specific production processes occurring in third countries within the order's scope,"[20] it did not do so here. The language of Commerce's *Order* against certain Chinese CSBW fittings makes no mention of goods produced or processed in other countries.

CBP cannot expand the scope of the *Order* to encompass third country production.[21] Congress instead authorized Commerce (not CBP) to conduct anti-circumvention inquiries to

---

[19] *Order*, 57 Fed. Reg. 29,702.

[20] *Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311, 1324-25 (CIT 2015). *See, e.g.*, *Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order*, 84 FR 2813, 2815 (Dept. of Commerce Feb. 8, 2019) (Commerce's antidumping order explicitly said that: "Subject merchandise includes common alloy sheet that has been further processed in a third country, including but not limited to annealing, tempering, painting, varnishing, trimming, cutting, punching, and/or slitting, or any other processing that would not otherwise remove the merchandise from the scope of the order if performed in the country of manufacture of the common alloy sheet").

[21] *Cf. Duferco Steel*, 296 F.3d at 1097 ("The scope of the order can be clarified but it cannot be changed by the interpretive process").

determine if "certain types of articles are within the scope of a duty order, even when the articles do not fall within the order's literal scope" because for instance they involve third-country processing not covered by the order.[22]  Such inquiries permit Commerce to include within the scope of an antidumping duty order merchandise completed or assembled in foreign countries using merchandise subject to a duty order; provided Commerce (not CBP) makes five enumerated, statutorily required findings.[23]

While Commerce conducted an anti-circumvention investigation of China-origin unfinished CSBW fittings processed in Thailand[24] and Malaysia,[25] it conducted no such investigation as to Vietnam.  Nor are the results of Commerce's anti-circumvention determinations as to Thailand and Malaysia automatically applicable to Vietnam.  Commerce's initiation of separate investigations and case law underscore this point.

In 1994, for example, Commerce determined that imports of CSBW fittings finished in Thailand from unfinished CSBW fittings produced in China constituted circumvention of Commerce's *Order*.  If a circumvention determination under an antidumping duty order were automatically applicable to other third countries, there would have been no reason for Commerce subsequently to conduct the circumvention inquiry involving Malaysia, which involved similar allegations that imports of CSBW fittings completed in Malaysia from finished or unfinished CSBW fittings produced in China were circumventing the *Order*.  The fact that Commerce

---

[22] *Deacero S.A. de C.V. v. United States* 817 F.3d 1332, 1337 (Fed. Cir. 2016).

[23] 19 U.S.C. § 1677j(b).

[24] *Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China; Affirmative Final Determination of Circumvention of Antidumping Duty Order*, 59 FR 15155 (Dept. of Commerce March 31, 1994).

[25] *Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty Order, 84 FR 29164* (Dept. of Commerce June 21, 2019).

conducted specific third country inquiries involving similar allegations underscores that the *Order* does not extend to finished CSBW fittings manufactured in Vietnam using rough/stamping parts produced in China.

Further, as this Court (and Commerce) recognize, such inquiries "are inherently fact-specific," such that "{e}ach case is highly dependent on the facts on the record, and must be analyzed in light of those specific facts."[26]  Because Commerce has not determined that merchandise completed in Vietnam using China-origin inputs (*i.e.* rough/stamping parts as opposed to unfinished CSBW fittings) is within the scope of Commerce's *Order*, CBP has no lawful basis to extend the scope of the *Order* as it did to arrive at its evasion determination here.

There can be no determination of evasion if the imported product under investigation is not merchandise subject to an antidumping duty order.  Finished CSBW fittings imported from Vietnam are, by law, not covered by the *Order*.  There was no legal basis for CBP to deem the imported products from BW Fittings "covered merchandise."  CBP offers none.

In fact, CBP's own regulations provide for CBP to refer to Commerce questions about whether "merchandise described in an allegation is properly within the scope of an antidumping or countervailing duty order" of Commerce.[27]  CBP failed to do so.  Because CBP's reading and application of Commerce's *Order* is contrary to law, CBP lacked substantial evidence to support its determination that the country of origin of the finished CSBW fittings produced and imported from Vietnam are China origin instead of Vietnam origin.

---

[26] *Deacero S.A. de C.V. v. United States*, 942 F. Supp. 2d 1321, 1331 (CIT 2013).

[27] 19 CFR § 165.16.

## 2. The *Order* does not cover finished CSBW fittings manufactured in Vietnam using rough/stamping parts from China.

As noted, the *Order* covers "carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form" from China.[28] CBP claims that "rough, unfinished (or semi-finished) CSBW fittings from China that undergo finishing processes (e.g., re-forming, sizing, shot blasting, cleaning, machine beveling, grinding, die stamping or painting processes) in a third country should remain country of origin China upon importation into the United States" under Commerce's *Order*.[29] CBP's unsupported and expansive reading of the *Order* is legal error as it impermissibly changes the scope of the *Order* to include merchandise not included within the text of the *Order* nor included in the U.S. International Trade Commission ("USITC") injury determination from the original investigation.[30]

Manufacturing CSBW fittings involves three production stages, as recognized by Commerce, the USITC, and the U.S. producer petitioners.[31] The first stage involves transforming seamless carbon steel pipe "into the rough shape of an elbow, tee, reducer, etc., through a cold- or hot-forming (or forging) process," at which point, "the fittings are considered to be in a rough, 'as formed,' state." During the second stage, the rough shapes "undergo a

---

[28] *Order*, 57 Fed. Reg. 29,702.

[29] P.R. 3681 at PR023456.

[30] *Duferco Steel*, 296 F.3d at 1097 (while the scope of an order may be clarified, "it cannot be changed in a way contrary to its terms"); *Eckstrom Indus. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (refusing to give an order the broad interpretation urged by the government because such a broad construction "belied by the terms of the Order itself"); *Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995) (rejecting interpretation that impermissibly modified the scope of the order).

[31] The alleger in the EAPA investigation, Allied, is not the U.S. petitioner; rather, it is an importer.

'reforming' or 'sizing' operation to ensure that the fitting will match the pipe to which it is to be welded." The third production stage involves "finishing steps," including "shot blasting, or other cleaning, machine beveling, boring and tapering, grinding, die stamping, inspection, and painting."[32]

An "unfinished pipe fitting" covered by the *Order* is not, as CBP contends, a "rough" or stamping part. To the contrary, the original investigation confirmed an "unfinished" fitting is "a fitting that has been advanced after forging but which requires at least one more processing step (i.e., shot blasting, machine beveling, boring and tapering, grinding, die stamping, inspecting or painting) to finish the fitting."[33] In other words, a covered "unfinished" CSBW fitting is a pipe fitting that has undergone the first and second stages of production such that only those operations in the third stage remain to be performed.[34]

The description of the production steps from the original investigation that resulted in Commerce's *Order* is consistent with BW Fittings' response to CBP in this EAPA investigation:

> *First*, rough and stamping part are the same. The terminology is used interchangeably. They are both created after long pipe is cut into short

---

[32] *Carbon Steel Butt-Weld Pipe Fittings From Brazil, China, Japan, Taiwan, and Thailand*, Inv. Nos. 731-TA-308-310, 520, and 521 (Second Review), USITC Pub. 3809 (October 2005) at I-14.

[33] *Certain Carbon Steel Butt Weld Pipe Fittings from China and Thailand*, Inv. Nos. 731 TA 520 and 521 (Final), USITC Pub. 2528 (June 1992) at 4 n.6. When considering whether a particular product is included within the scope of an antidumping duty order, it is appropriate to consider the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of {Commerce} . . . and the Commission." 19 C.F.R. § 351.225(k)(1).

[34] Commerce determined in the Malaysian anti-circumvention investigation—consistent with the petitioner domestic producers' allegations that led to the Commerce *Order*—that performing the first and/or second stages of production in a third-country (there Malaysia) render the product outside the scope of the *Order* as to China. *See* Memorandum, *Issues and Decision Memorandum for the Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China* (Dept. of Commerce June 14, 2019) at 16-17.

piece of long pipe and then gone through hot/cold forming process to
create rough form of elbow, tee, reducer . . . .

*       *       *

*Second,* as to the difference between rough and carbon steel butt-weld
fittings (CSBW), the later refers to finished carbon steel butt-weld fittings.
In terms of production process, the difference is that rough products
undergo processing steps, including: (i) beveling; (ii) *sizing*; (iii) grinding;
(iv) shot blasting; (v) heat treatment; and (vi) painting to become finished
CSBW.

*       *       *

*Third*, as to differences between rough and semi-finished CSBW, the later
has degree of finish better than the former. In terms of production process,
rough products must undergo the following steps to become semi-finished
CSBW: (i) beveling; (ii) *sizing*; (iii) grinding; and (iv) shot blasting.[35]

As BW Fittings confirmed, rough (or stamping) parts are the result of the first production

step—*i.e.*, they still must undergo the second and third stages of production.  Consistent with the

USITC's description of subject merchandise during the initial injury investigation that led to the

*Order* and the understanding of Commerce in defining and issuing its *Order*, the rough parts BW

Fittings imported from China are not "unfinished" CSBW fittings that are subject to the *Order*.

BW Fittings stated in its response to the request for information ("RFI") that all finished

CSBW fittings that it exported to the United States "underwent at least" the second and third

production steps in Vietnam,[36]  which in conformance with Commerce's *Order* is not subject to

it.  CBP identifies no facts to the contrary, nor can it.

While BW Fittings did not have the equipment to perform <u>hot</u> sizing until it acquired two

electric furnaces (clearing Vietnam customs around May 31, 2019) and began using it in

---

[35] P.R. 322 at PR018098-99.

[36] P.R. 381 at PR023614-15.

production on June 1, 2019,[37] it had the capability to perform <u>cool</u> resizing throughout the period

of investigation.  For example, the record confirms BW Fittings acquired two elbow forming

machines, which cleared Vietnam Customs around July 3, 2018 (bill of lading no. KLS1801130),

and began using that equipment during production on August 1, 2018—all well before the period

of investigation.[38]  Likewise, BW Fittings acquired two four-column hydraulic presses

(Production Range: 1/2inch to 12 inch), which cleared Vietnam Customs around July 3, 2018

(bill of lading no. TSNCB18005172) and began using that equipment in production on

September 1, 2018—again, before the period of investigation.[39]  Substantial evidence—indeed,

unrebutted evidence—thus confirms that BW Fittings had the capability and capacity to perform,

and in fact did perform, the second and third stages of production throughout the period of

investigation.

Based on the language of the *Order*, rough/stamping parts are not "unfinished" CSBW

fittings within the scope of the *Order*.  A fact that even the alleger Allied, through its silence,

does not dispute.  Because CBP's evasion determination rests on this fundamental error, its

determination that finished CSBW fittings produced in Vietnam using Chinese-origin

rough/stamping parts is unsupported by the required substantial evidence and is contrary to law.

**B.      CBP's evasion determination is arbitrary and capricious because it based
that determination on a finding that not only is unsupported by the requisite
substantial evidence considering the record as whole, but is contradicted by
evidence CBP obtained during the investigation.**

CBP admits that the *Order* does not cover CSBW fittings produced in Vietnam using

Chinese-origin seamless pipe.  CBP nevertheless claims that evasion occurred because CBP "did

---

[37] P.R. 340; *see also* P.R. 260 at PR014715-16, PR014783-89.

[38] P.R. 340; *see also* P.R. 259 at PR014208-20.

[39] P.R. 340; *see also* P.R. 259 at PR014256-57, PR014278-83.

not identify any raw material documentation to support the purchase of any seamless pipe (or steel plate) by BW Fittings during the POI."[40] CBP's position is unsupported by any evidence.

### 1. CBP's own attaché report confirms that BW Fittings purchased and used seamless pipe in its production of finished CSBW fittings.

On January 9, 2020, the CBP attaché visited BW Fittings facility to conduct a site visit.[41] During the site visit, the attaché acknowledged substantial production equipment at the BW Fittings facility used to transform seamless pipe into finished CSBW fittings.[42] The CBP attaché further witnessed BW Fittings using in the production of CSBW fittings in Vietnam, and the report confirms that the attaché identified and photographed seamless pipe that BW Fittings used to produce the finished CSBW fittings at its facility.[43]

Further confirming the CBP attaché's visit, Norca submitted site visit reports and videos demonstrating that BW Fittings had the capacity and capability to transform—and, in fact, was transforming—seamless pipe into finished CSBW fittings at BW Fitting's Vietnam facility.[44] CBP did not reference these first-hand accounts in its evasion determination, nor did it challenge the veracity of the accounts. Nor could CBP challenge those accounts given the site visit reports Norca submitted are consistent with CBP's own observations. These facts alone render CBP's

---

[40] P.R. 368 at PR023461.

[41] P.R. 58; C.R. 183.

[42] P.R. 58 at PR001389; C.R. 183 at CR005004.

[43] P.R. 58 at PR001390; C.R. 183 at CR005005; *see also* C.R. 77; C.R. 99; C.R. 106-108; C.R.113-118; C.R. 120; C.R. 122-124; C.R. 134-135; C.R. 140-141; C.R. 154-159; C.R. 160-164; C.R. 170; C.R. 394-396.

[44] P.R. 113 at PR002480; P.R. 120; *see also* P.R. 272 at PR015602-04; P.R. 278; P.R. 344 at PR019157; P.R. 345.

C.R. 212 at CR006011; C.R. 219 *see also* C.R. 339 at CR192141-43; C.R. 319, 320, 321 (CBP did not include in the administrative record all photographs Norca submitted as Ex. A8 to Norca's Resp. to Supp. RFI); C.R. 348 at CR192577; C.R. 349; C.R. 402-403; C.R. 409.

finding and determination irrational.  For substantial evidence to exist, the agency must consider

the record evidence as a whole.[45]  CBP failed to do so.

> **2.  Contrary to CBP's claim, documentss Norca and BW Fittings produced during the investigation confirm that BW Fittings imported seamless pipe to produce finished CSBW fittings in Vietnam; there is no evidence to the contrary.**

Both Norca and BW Fittings submitted bills of lading, Vietnam customs declarations,

material receiving documentation, and test reports that evidence BW Fittings' importation and

use of seamless pipe during the POI to produce the CSBW fittings Norca imported.[46]

Although BW Fittings' raw material invoices for seamless pipe contained a numeric

description, review of the records produced confirm the purchase and import of seamless pipe

under the following Norca purchase orders/contracts:

- PO 505.005092 – Contract BW190049[47]
- PO 505.005093 – Contract SC-BW190050[48]
- PO 505.005095 – Contract SC-BW190052[49]

---

[45] *Atl. Sugar*, 744 F.2d at 1562.

[46] P.R. 122 at PR002678-733; C.R. 221 at CR006318-73; *see also* P.R. 350 at PR019857-20069; P.R. 351 at PR020246-396; P.R. 352 at PR020398-480; P.R. 349 at PR019357-411, PR019418-44, PR019455-64, PR019466, PR019468-98, PR019504-35, PR019552-89, PR019601-59, PR019667-69; P.R. 350 at PR019887-911, PR019922-31, PR019933, PR019935, PR019938-42, PR019945-47, PR019955-89, PR019995-97, PR020004-60, PR020065-69; P.R. 351 at PR020246-71, PR020275-77, PR020284-315, PR020319-21, PR020325-28, PR020331-35, PR020352-90; P.R. 352 at PR020402-58, PR020463-79; P.R. 353 at PR020638-711, PR020735, PR020738-45, PR020762-97; P.R. 354 at PR020919-80, PR021003, PR021006-13, PR021030-62, PR021068-77, PR021079-105, PR021110; P.R. 355 at PR021244-317, PR021340-72, PR021375-77, PR021381-407, PR021412-14; P.R. 356 at PR021533-59, PR021564-628; P.R. 357 at PR021725-52, PR021763-819, PR021821-25; P.R. 358 at PR021966-2013, PR022015-18, PR022036, PR022039-46, PR022063-92, PR022103, PR022105-65; P.R. 359 at PR022292-99; P.R. 360 at PR022361-70.

[47] P.R. 237 at PR012756; P.R. 238 at PR012797-98, PR012804-05.

[48] P.R. 238 at PR012959; P.R. 239 at PR012988-92, PR013006-10, PR013025-29, PR013042-46, PR013055-59; P.R. 240 at PR013077-81, PR013097-100, PR013132-49.

[49] P.R. 240 at PR013375, PR013403-10, PR013423-27; P.R. 241 at PR013443-47, PR013456-60, PR013477-81, PR013516-28.

- PO 505.005100 – Contract BW190057[50]
- PO 505.005101 – Contract SC-BW190058[51]
- PO 505.005102 – Contract BW190059[52]
- PO 505.005103 – Contract SC-BW190060[53]
- PO 505.005104 – Contract SC-BW190061[54]
- PO 505.005105 – Contract SC-BW190062[55]

The substantial increase in electric and water utility usage[56]—particularly from November 2019 through January 2020—coincides with BW Fittings' acquisition and use during production of the electric furnaces and saws, and the purchase and transformation of seamless pipe into finished CSBW fittings in Vietnam. This too confirms that BW Fittings imported seamless pipe to produce finished CSBW fittings in Vietnam during the POI.

Notwithstanding the evidence submitted, CBP speculates, without any support, that BW Fittings did not purchase seamless pipe. CBP's speculation does not withstand scrutiny.

First, CBP speculates that "the numeric descriptions in the {BW Fittings'} product code list and on the raw material invoices were for rough fittings."[57] This conclusion, however, is unsupported supposition, not based on the requisite statutory substantial evidence. Indeed, CBP itself witnessed the production of finished CSBW fittings from seamless pipe by BW Fittings in Vietnam during the attaché site visit.[58]

---

[50] P.R. 181 at PR007198, PR007219, PR007229-33.

[51] P.R. 131 at PR003021, PR003049, PR003051-53, PR003072-74, PR003107-14.

[52] P.R. 183 at PR007330, PR007360, PR007368; P.R. 185 at PR007398, PR007408-14.

[53] P.R. 131 at PR003315, PR003331-32.

[54] P.R. 133 at PR003689, PR003705.

[55] P.R. 135 at PR004129, PR004132-40, PR004145-46.

[56] P.R. 324 at PR018171-78.

[57] P.R. 368 at PR023459.

[58] C.R. 394; C.R. 395; C.R. 396.

Based on the CBP site visit, and the bills of lading and customs declarations produced by BW Fittings, it is apparent that the numeric descriptions were for seamless pipe; there is no substantial evidence otherwise. Indeed, careful examination of the records Norca and BW Fittings produced to CBP during the investigation demonstrate that CBP's finding is contrary to the evidence. For example, the records Norca produced for Entry No. 8E2-1234593-9—Norca purchase order no. 505/5096-1—confirms that Norca imported finished CSBW fittings that BW Fittings produced from seamless pipe.[59]

- According to bill of lading COAU7880277600, the seamless pipe (HTS 730490) BW Fittings purchased seamless pipe from Asia Piping Manufacturing Group Ltd. shipped to Vietnam on September 11, 2019.[60]

- The Vietnam customs declaration associated with this shipment also identifies the raw materials imported from Asia Piping to be seamless pipe.[61]

- The first two line items on the BW Fittings incoming product inspection record associated with the bill of lading identifies raw materials from heat no. 158148, with (1) 1307 pieces having measurements of 89.1 mm diameter, 7.1 mm W/T, and 0.330 m length, and (2) 25 pieces having measurements of 89.1 mm diameter, 7.1 mm W/T, and 0.180 m length.[62]

- The corresponding goods receiving note shows BW Fittings receiving the seamless pipe on September 19, 2019 under invoice 19090601. Line no. 12, which corresponds to invoice code 23, shows BW Fittings receiving 1307 pieces of seamless pipe from heat no. 158148 having measurements of 89 mm OD, 7 mm WT, and 330 m length.[63] Line no. 36, which corresponds to invoice code 4, shows BW Fittings receiving 25 pieces of seamless pipe from heat no. 158148 having measurements of 89 mm OD, 7 mm WT, and 180 m length.[64]

---

[59] P.R. 351 at PR002226-27.

[60] P.R. 351 at PR020246.

[61] P.R. 351 at PR020247-71.

[62] P.R. 351 at PR020275.

[63] P.R. 351 at PR020277.

[64] P.R. 351 at PR020277.

- Asia Piping invoice 19090601, which includes BW Fittings order no. BW/HK-190053, includes 1307 pieces of 89*7*330(mm) under invoice code 23 and 25 pieces of 89*7*180(mm) under invoice code 4.[65]

- Asia Piping packing list 19090601, which includes BW Fittings order no. BW/HK-190053, includes 1307 pieces of 89*7*330 (mm) under item no. 23 and 25 pieces of 89*7*180 (mm) under item no 4.[66]

This is but one example highlighting that the records confirm not only that BW Fittings purchased seamless pipe, but also that the numerical description on the Asia Piping invoices correspond to seamless pipe. CBP, however, eschewed this type of analysis—or even asking BW Fittings for such an explanation. CBP's findings about seamless pipe cannot withstand scrutiny under this Court's review standard because the record evidence contradicts CBP's findings

Second, CBP claims that BW Fittings shifted the timeline for when it began using seamless pipe during production—September 2019 in its RFI response and June 2019 in its response to the supplemental RFI.[67] The explanation is not that BW Fittings sought to deceive CBP; rather, it is that the individual at BW Fittings misunderstood the supplemental question. BW Fittings—as confirmed by record evidence—began importing machines used to convert seamless pipe to rough fittings in June 2019 and began importing seamless pipe in September 2019.[68] Instead of seeking clarification on these perceived discrepancies, CBP elected to speculate. Speculation is not substantial evidence.[69]

---

[65] P.R. 352 at PR020507.

[66] P.R. 352 at PR020508-09.

[67] P.R. 368 at PR023460.

[68] *See* P.R. 340; *see also* P.R. 259 at PR014184-207; P.R. 260 at PR014715-16, PR014783-89.

[69] *See Hyundai Hevy Indus. Co. v. United States*, 485 F.Supp.3d 1380, 1399 (CIT 2008) (agency may not base its decision on speculation); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'").

The record does not support CBP's findings or evasion determination; there is no evidence, much less substantial evidence otherwise.  The documents that BW Fittings produced during the investigation are consistent with CBP's own on-site observations, and demonstrate that BW Fittings purchased seamless pipe beginning in September 2019—before CBP received Allied's allegations—and used that seamless pipe to produce finished CSBW fittings in Vietnam that BW Fittings sold to Norca.  CBP bases its claims that BW Fittings did not purchase and use seamless pipe in its production process entirely on speculation and unreasonable inferences—the very definition of arbitrary and capricious action and violation of the legal requirement that its decisions be based on substantial evidence.

**C.  CBP violated the statutory substantial evidence requirement that its decision consider the record as a whole, by ignoring evidence that contradicts CBP's findings on which it based its evasion determination.**

**1.  CBP unlawfully excluded exculpatory information from the administrative record.**

On or about June 17, 2020, a third party, in response to a request from CBP,[70] submitted to CBP through eapallegations@cbp.dhs.gov numerous photographs and videos from a November 2019 site visit of BW Fittings' Vietnam facility.  Norca did not learn about CBP's communications with the third party or that the third party submitted evidence to CBP until after CBP issued its final determination.  The failure to provide Norca's counsel a public version of the CBP  request for information in the EAPA investigation sent to the third party is inexplicable and contrary to CBP regulations and practice and due process.  CBP, for example, provided each of the parties to the investigation—Norca, IPPG, and the alleger Allied—the public version of the RFIs CBP issued to BW Fittings.[71]

---

[70] *See* Addendum B.6.

[71] *See* Addendum A.1.

Compounding the legal error is CBP's decision to exclude from the administrative record CBP's own communications with the third party and the documents and information the third party submitted to CBP pursuant to CBP's investigation request. This exclusion violates 19 C.F.R. § 165.21 because the administrative record must include, among other things, materials obtained and considered by CBP during the investigation. CBP erroneously attempts to justify its exclusion of information from the administrative record by faulting the third party for not bracketing confidential information or submitting a certification as required by 19 CFR § 165.4. CBP's justifications violate law and substantial evidence.

First, the regulation that CBP cites involves "interested parties" who submit information and request confidential treatment. The third party is a Norca customer that distributes various fittings, flanges, valves, and other accessories. The third party is not an "interested party" in the proceeding within the meaning of 19 CFR § 165.1; it is just someone answering CBP's query in the investigation. Nor does CBP support that this submitter actually requested confidential treatment for its submission. Even setting all the above aside, if the third party never requested confidential treatment, CBP would have no basis to dismiss the submission. Further, even if the third party intimated it sought confidentiality, but never responded to CBP requests for a public version, CBP abused its discretion in not including the submitted evidence in the record or simply treating the submission as public.

Second, even if CBP determined that the third party submission did not comply with CBP's regulations for seeking confidential treatment, CBP's failure to provide a public version of the RFI that it sent to the third party and its failure to copy Norca's counsel on the public version of communications with the third party addressing bracketing issues or seeking a public version is unlawful. The lack of transparency in this instance is also unlawfully inconsistent

with CBP copying the alleger's counsel and interested parties on similar communications involving Norca's submission of information during the investigation.[72]

It is unlawful for CBP to exclude from the administrative record the information that it received from the third party. That information should be included in the record and should have been considered by CBP in making its final determination. CBP's conduct raises questions about the integrity of its investigation.

> **2. The photographs submitted by a third party to CBP during the investigation that CBP unlawfully did not include in the administrative record contradict CBPs finding that BW Fittings did not purchase seamless pipe.**

At the core of CBP's evasion determination is its rejection that BW Fittings purchased seamless pipe. CBP made this finding because it "concluded that the numeric descriptions on raw material invoices were actually for rough fittings . . . ."[73] Leaving aside that CBP's finding is speculation contradicted by record evidence, *see* Section B.2, *supra*, the materials the third party submitted during the investigation, per CBP's request, also contradict CBP's findings and conclusions.[74]

First, IMG_20191113_114205312 from the photographs the third party submitted per CBP request in this investigation, shows seamless pipe in BW Fittings' facility, which is contrary to CBP's speculation that it could not confirm that "raw material purchases consisted of seamless pipe as claimed by BW Fittings."[75]

---

[72] *See* Addendum A.2.

[73] P.R. 368 at PR023459.

[74] Norca provides the Court in Addendum B.1-B.5 with the communications, with attachments from the third party to CBP. Note Norca is redacting the third party's identifying information.

[75] The metadata and file properties of the photographs submitted to CBP confirm the third-party photographs were taken: (a) on November 13, 2019, and (b) at a location, as confirmed by the latitude and longitude coordinates, in the Long Giang Industrial Park, Tan Lap 1 Commune, Tan



Second, IMG_20191113_114227177 (002) and IMG_20191113_114213703 each show cut seamless pipe of varying dimensions, again confirming BW Fittings' statements that it purchased and used seamless pipe to produce in Vietnam finished CSBW fittings for Norca.





Phuoc District, Tien Giang, Vietnam where BW Fittings' facility is located. As such, they are of unquestioned reliability.

Third, IMG_20191113_114010088, IMG_20191113_114013796_HDR, and IMG_20191113_114023149, when compared to IMG_20191113_114227177 (002), show tags on seamless pipe at BW Fittings' Vietnam facility with "numeric descriptions," *e.g.*, 219mm*9.8mm*1090mm.









These photographs confirm that the numeric description on the raw material purchase orders BW Fittings produced correspond to seamless pipe, not rough/stamping parts. In other words, the record evidence contradicts CBP's conclusion that "the numeric descriptions on raw material invoices were actually for rough fittings."[76]

The photographs the third party submitted to CBP confirm the substance of the site visit report Norca submitted in response to a CBP RFI during the investigation and further corroborate CBP's observations during its attaché's January 2020 site visit. Indeed, the photographs requested by CBP in this EAPA investigation demonstrate that BW Fittings had seamless pipe that it used to produce CSBW fittings in Vietnam. CBP's claim to the contrary is unsupported by any evidence, much less the required substantial evidence.

### D. CBP unlawfully deprived Norca of due process.

The Federal Circuit recognizes that an importer, participating in an administrative proceeding, has a due process right to "notice and a meaningful opportunity to be heard."[77] Due process requires notice of the proposed official action, access to the evidence supporting that

---

[76] P.R. 368 at PR023459.

[77] *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed. Cir. 2012).

action, and an opportunity to rebut claims.[78]  CBP deprived Norca of due process throughout the investigation.

> 1. **CBP failed to provide Norca with access to records during the investigation.**

CBP failed to provide Norca with the public version of the attaché report during the investigation as required.[79]  It further failed to provide Norca with notice of RFI's submitted to a third party or that it received evidence from that third party.   Norca's counsel only now had the opportunity to view the confidential version of the administrative record, thus depriving Norca of the opportunity to rebut the allegations against Norca and the evidence on which CBP based its determination.  These deficiencies cannot be remedied at this stage, because, as this Court recently observed: "{A}ccess to the complete record on judicial review cannot cure improper withholding of information by Customs . . . ."[80]   The record remains fatally incomplete because it lacks Norca's responses to the so-called evidence that CBP withheld during the investigation.

> 2. **CBP deprived Norca of due process by basing the final determination on new allegations of perceived document discrepancies that CBP never provided an opportunity to explain.**

CBP's application of adverse inferences against Norca based on BW Fittings' responses—and the deficiencies and issues CBP identified in certain responses—deprived Norca of due process.  This placed Norca at an unfair disadvantage as it was not aware that CBP had questions about certain alleged discrepancies in BW Fittings' and Norca's responses to CBP's

---

[78] *Royal Brush Mfg. v. United States*, 483 F. Supp. 3d 1294, 1306 (CIT 2020)  ("Due process forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation . . . Thus,.to comply with due process, Customs' procedures must afford adequate opportunity for importers to respond to the evidence used against them.").

[79] 19 C.F.R. § 165.4(e).  *See also Kemira Fibres Oy v. United States*, 858 F. Supp. 229, 235-36 (CIT 1994) ((failure to comply with regulatory procedures constituted arbitrary and capricious conduct that "deprived {the plaintiff} of its constitutional due process right").

[80] *Royal Brush*, 483 F. Supp. 3d at 1307 n.20.

questions.  However, CBP's determination reflects that both parties cooperated and responded timely to CBP's requests for information and supplemental requests for information.[81]  Both BW Fittings' and Norca's cooperation with CBP during the investigation confirm that both parties would have clarified any points on which CBP had questions.  Rather than seeking clarification, as it had done elsewhere, CBP instead drew unsupported adverse assumptions about BW Fittings' and Norca's responses without giving BW Fittings and Norca a chance to address.

CBP's regulations only permit CBP to make adverse inferences during an EAPA investigation only under limited circumstances–*i.e.*, if the party to the investigation "fails to cooperate and comply to the best of its ability with a request for information made by CBP . . . ."[82]  There was no such finding here against BW Fittings or Norca.  Nor did CBP find that either BW Fittings or Norca failed to comply to the best of their respective abilities.  Not answering a question not asked is not failure to comply to the best of one's ability.  As such, the necessary predicate for applying adverse inferences against BW Fittings or Norca is absent.

Yet, applying adverse inferences is what CBP did in making its determination.  CBP specifically relied on claimed discrepancies in BW Fittings' documents to justify applying adverse inferences to make an affirmative finding of evasion by Norca.  CBP, however, did not notify Norca or BW Fittings during the investigation of what CBP felt was a discrepancy, or opportunity to address.  In short, CBP faults BW Fittings—and by extension, Norca—for not answering a question that CBP never asked.

In drawing adverse inferences, CBP violated Norca's right to a meaningful and fair proceeding.  Furthermore, CBP's failure to provide Norca (or BW Fittings) with notice of what

---

[81] P.R. 368 at PR023454-55.

[82] 19 C.F.R. § 165.6(a).

CBP considered to be deficient responses—and an opportunity to remedy or explain the deficiency—renders CBP's evasion determination unsupported by the requisite substantial evidence and otherwise contrary to law.[83]

       **E.**    **CBP engages in unlawful speculation unsupported by the requisite substantial evidence to unreasonably draw adverse inferences against Norca based on perceived inconsistencies in documents and information BW Fittings provided during the investigation.**

       CBP claims "discrepancies and issues with the information on the record of this investigation" that BW Fittings provided CBP during the investigation.[84]  As noted, CBP cannot draw adverse inferences to support the evasion determination because CBP did not notify BW Fittings of these concerns and provide an opportunity to address the concerns.[85]  Regardless, CBP's speculation thereof is not the requisite substantial evidence for a lawful determination.[86]

       CBP states that sales contracts from BW Fittings to Norca include "fine print indicating that transshipment was 'To Be Allowed.'"[87]  CBP did not ask Norca or BW Fittings to explain this fine print and assumed without any support.  CBP speculates that BW Fittings merely

---

[83] *Accord. Ta Chen Stainless Steel Pipe v. United States*, 23 C.I.T. 804 (1999); *see also Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*, 28 C.I.T. 1185, 1193-95 (2004) (noting that alleged deficiencies in submitted information that are only articulated upon the issuance of the Final Determination provide little basis from which to understand how to remedy the identified deficiencies before the conclusion of a proceeding, as well as little reason to seek out additional information to supplement the submitted data). While these are Commerce antidumping proceedings, the legal standards (*i.e.*, not acting to best of ability) and due process are the same as here. If one is not notified of a perceived deficiency, one cannot address it. This Court's jurisprudence as to EAPA is just beginning, but its long-established existing jurisprudence on the pertinent standards here are pertinent.

[84] P.R. 368 at PR023461.

[85] *Royal Brush*, 483 F. Supp. 3d at 1306.

[86] *Novosteel SA v. United States*, 284 F.3d 1261, 1276 (Fed. Cir. 2002) ("It is well established that speculation does not constitute 'substantial evidence"). *Cf. Yangzhou Bestpak Gifts & Crafts v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (noting that Commerce cannot base its determinations on "mere conjecture or supposition").

[87] P.R. 368 at PR023461.

shipped covered merchandise from China to Norca through Vietnam. This speculation is unsupported by any evidence (much less the statutorily required substantial evidence) of record. The provision merely addresses permissible routing of Vietnamese origin finished CSBW fittings from BW Fittings to Norca; namely, Norca accepts that the container of finished CSBW fittings from BW Fittings may ship directly from the Vietnam port of loading to the port of discharge or indirectly from the port of loading to the port of discharge via a transshipment port. There is nothing nefarious about such a standard shipping line term being present in a sales contract involving container shipment via ocean transit. CBP cites no evidence, much less substantial evidence, otherwise. CBP just speculates to a conclusion without asking.

CBP further claims that "raw material sales contracts and invoices with written descriptions for rough fittings submitted in BW Fittings' RFI response did not contain sufficient information for BW Fittings' raw material suppliers to fulfil the orders." Even if such unsupported speculation is true, CBP's finding is irrelevant. There is no dispute that BW Fittings purchased rough parts. And the use of such parts in production in Vietnam, as discussed, does not render the finished CSBW fittings at issue "covered merchandise."

CBP claims "additional information must have been communicated between BW Fittings and Asia Piping that was not provided to CBP."[88] To support its unsupported speculation, CBP highlights that "raw material invoices provided in response to CBP's request at the on-site visit contained more detail for the products than the same raw material invoice numbers submitted in BW Fittings' RFI response." Again, CBP did not ask BW Fittings follow-up questions on this speculation or otherwise provide BW Fittings with the opportunity to address this unknown CBP mindset. Comparing the documents reveals that the raw material invoices BW Fittings produced

---

[88] P.R. 368 at PR023461-62.

in response to the RFI omitted two columns: "import code" and "import name." The reasonable explanation is that the two columns—contained on the version provided to CBP during the on-site visit—were for internal purposes such that BW Fittings could prepare the necessary Vietnam Customs declarations and are of no consequence here. The additional columns do not communicate "additional information." To the contrary, the information is either cumulative to the other columns (import name) or irrelevant to the supplier (import code).

CBP further claims that "BW Fittings' production records contain various discrepancies that cast doubt on their authenticity, as they do not appear to be representative of BW Fittings' actual production experience."[89] Such far-reaching speculation is unsupported CBP bases its claim on isolated alleged "discrepancies" in the voluminous production records that BW Fittings produced on short order (tight deadlines) in the investigation. CBP, however, did not thereafter provide BW Fittings an opportunity to address any CBP questions. That is unlawful.

There are, moreover, plausible explanations for what CBP claims are "discrepancies" that CBP never noted to BW Fittings to give BW Fittings a chance to address., which further beg for giving the accused a chance to defend itself. For example, BW Fittings likely has employees on hand on Sundays to perform inspections and sign-off on work performed, a common occurrence.

CBP also faults the process flow cards from 2019 on which BW Fittings' employees signed off on cutting and forming processes during a time before BW Fittings said it had the ability to perform the first production stage.[90] While CBP does not cite any specific process flow cards, BW Fittings' documents indicate that CBP is misreading the date on the documents. CBP also fails to recognize that the process flow cards from before September 2019, while

---

[89] *Id.* at PR023463.

[90] *Id.*

containing a line for cutting and forming (no doubt anticipating expanding production capabilities), did not have those boxes checked or sign-off by an inspector.[91]  Finally, the raw material requisitions, as CBP admits, shows cut pipe being withdrawn for production.[92]

CBP faults BW Fittings for not providing Chinese certificates of origin for raw materials it obtained.  While admitting a letter from BW Fittings stating Vietnam Customs does not require certificates of origin for imported raw materials, CBP dismisses that statement as "not align{ing} with the thorough documentation that CBP reviewed from Vietnamese Customs for the arrival of the production equipment from China . . . ."[93]  CBP compares apples-to-oranges, and fails to acknowledge that Vietnam Customs may not require certificates of origin for certain categories of imports, like raw materials.  CBP, of course, could have sought clarification from BW Fittings.  Once again, it did not, and instead relies on unsupported speculation.  Indeed, Customs could have looked to Vietnam Customs rules—namely, Circular 38/2018/TT-BTC dated April 20, 2018[94]—which confirm the explanation BW Fittings supplied.

CBP highlights Vietnam customs documents included with BW Fittings' production concerning equipment purchases that shows "the shipment of semi-finished seamless fittings

---

[91] *Compare* P.R. 236 at PR012566-76 (Aug. 2019 production) and P.R. 235 at PR012367-435 (Sept.-Oct. 2018 production) *with* P.R. 131 at PR003168-216 (Oct. 2019 production) and P.R. 133 at PR003869-920 (Jan. 2020 production).

[92] P.R. 368 at PR023464.

[93] *Id.* at PR023462.

[94] Vietnamese Circular 38/2018/TT-BTC dated April 20, 2018, is available for download in Vietnamese at https://www.customs.gov.vn/Lists/VanBanPhapLuat/ViewDetails.aspx?ID=10666 (last accessed 14 Dec 2020).  While the specific circular is not available in English on the Vietnam Customs website, as part of a separate matter, the United States Department of Agriculture, Foreign Agricultural Services provided an unofficial translated version of this Circular. It is available at: https://apps.fas.usda.gov/newgainapi/api/report/downloadreportbyfilename?filename=Vietnam%20Customs%20Requires%20Certificate%20of%20Origin%20for%20Meat%20and%20Poultry%20_Hanoi_Vietnam_12-20-2018.pdf (last accessed 14 Dec 2020).

from AFI to BW Fittings in April 2018."[95]  This material does not support the evasion

determination because it concerns activity outside the period of investigation and is thus

irrelevant.

CBP also draws adverse inferences against BW Fittings and Norca because CBP

purportedly "identified vast inconsistencies between the equipment purchase documentation

provided in the Importers' CF28 responses and BW Fittings' RFI response, which calls into

question the veracity of the information provided by BW Fittings."[96] Drawing such speculative

adverse inference is improper because CBP never asked BW Fittings (or Norca) for an

explanation as to its explanation in this regard.  Notwithstanding CBP's failure to comply with

its own regulations (and Amendment 5 to the U.S. Constitution), the inconsistencies CBP claims

do not support an adverse inference.  According to CBP, both the CF28 responses and BW

Fittings' RFI response included invoice numbers BWIMEQ-190001 through 190006, but the

invoice dates were different, the arrival date in Vietnam was different, and the equipment

identified were different.[97]  CBP also claims that BW Fittings produced documentation in its RFI

response for additional shipments of equipment not included with the CF28 response.[98]  Based

on this, CBP claims that it "cannot determine which set of documents is authentic."[99]

What CBP overlooks is that both sets of documents are authentic.  It is apparent from the

documentation—including Vietnam customs declarations, Vietnam customs clearances, and bills

of lading—that the same invoice numbers were used in 2018 and 2019, albeit, for different

---

[95] P.R. 368 at PR023463.

[96] *Id.* at PR023462.

[97] *Id.*

[98] *Id.* at PR023462-63.

[99] *Id.* at PR023463.

machinery.  The equipment purchase records submitted with the RFI response, moreover, cover all the machinery BW Fittings identified in its RFI response.[100]  There is a plausible explanation. CBP's RFI to BW Fittings requested that BW "{d}escribe all the equipment used in the production of CSBW fittings" and "{p}rovide the original invoice(s), proof of payment(s), purchase order and all bills of lading . . . for purchase of the equipment,"[101] *i.e.*, equipment used in production (present tense), not equipment no longer used (past tense).  In responding to the CF28, an employee from BW Fittings undoubtedly made a mistake and pulled the incorrect purchasing documents for the CF28 responses, *i.e.*, documents for equipment not presently used in production.   Again, CBP never noted this *post hoc* speculative concern and gave an opportunity to address.

CBP's drawing an adverse inference on this issue is particularly egregious given it asked BW Fittings to provide certain clarifying information "{f}or each of the machines (count as of April 30, 2020)," including date of acquisition/arrival to BW Fittings, seller of the machine, bill of lading number, and date machine was first used in production.  CBP did not disclose that it purported "identified vast inconsistencies" between the documents BW Fittings submitted in Exhibit 18 and the documents BW Fittings submitted to the importers for the CF28 responses. Having failed to raise the issue with BW Fittings during the investigation to give BW Fittings a chance to address, CBP cannot draw an adverse inference in rendering its determination, particularly given BW Fittings cooperated throughout the investigation as to answering all CBP specifically and explicitly address questions.

---

[100] *Compare* P.R. 258 and P.R. 340 *with* P.R. 259 and P.R. 260.

[101] P.R. 67 at PR001438.

Norca reiterates that due process and CBP's regulations mandated that Norca and BW Fittings be apprised of deficiencies and issues CBP identifies and provided an opportunity to remedy or explain. CBP did neither and the regulations now prohibit Norca from providing explanations from BW Fittings during this administrative review, thereby compounding the due process violation.[102]

## V. CONCLUSION

CBP's November 6, 2020 Final Determination, as affirmed by the March 22, 2021 Administrative Review is not supported by substantial evidence, and is contrary to law. Norca, therefore, requests that the Court vacate CBP's evasion determination and prohibit CBP from taking adverse action against Norca based on its November 6, 2020 Final Determination.

Date: August 20, 2021

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Peter Koenig
peter.koenig@squirepb.com
Jeremy W. Dutra
jeremy.dutra@squirepb.com
Christopher D. Clark
christopher.clark@squirepb.com

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Counsel to Plaintiff*
*Norca Industrial Company, LLC*

---

[102] Norca remains willing and able to address the specific issues CBP identified with BW Fittings' responses if CBP provides the legally required opportunity to do so—and specifically requests that the Court instruct CBP to provide that opportunity during any remand.