UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| **NORCA INDUSTRIAL COMPANY, LLC,** | |
| **Plaintiff,** | |
| **INTERNATIONAL PIPING & PROCUREMENT GROUP, LP,** | **Consol. Court No. 21-00192** |
| **Consolidated Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant.** | |

## <u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY</u>

Defendant, the United States, respectfully submits this reply to address the arguments

raised by plaintiffs, Norca Industrial Company, LLC (Norca) and International Piping and

Procurement Group, LP (IPPG), in their opposition to our motion to stay (ECF No. 28).

This case concerns whether plaintiffs Norca and IPPG evaded an antidumping duty order

on carbon steel butt-weld pipe fittings (CSBW fittings) from the People's Republic of China

(Order No. A-570-814) when they bought finished CSBW fittings from a Vietnamese supplier

and imported those fittings into the United States.  Making this determination involves questions

of fact, including regarding the extent to which the Vietnamese supplier processed those fittings

in Vietnam after receiving materials from China, and questions of law, including the scope of

Commerce's Order.  Although the remand focused on factual questions, plaintiffs raised

questions regarding the scope of the order during the remand.  As a result, defendant now moves

for a stay to permit CBP to refer those scope questions to Commerce for a determination which

Congress authorized Commerce, but not the CBP to resolve.  Attempting to prematurely end this

deliberative—and Congressionally-required—process, plaintiffs offer four meritless arguments and invite this Court to vacate CBP's determinations, thereby permitting plaintiffs' continued importation without appropriate agency (or judicial) review of whether their importation constitutes evasion. This Court should reject each of their arguments.

Plaintiffs first argue that "the Government fails to identify what occurred during the remand proceedings that led CBP to decide . . . that it cannot determine whether the imported merchandise is within the scope of the Order." Opp. at 3. Plaintiffs provide no authority for the proposition that such information is necessary or even relevant. However, the explanation is simple. On remand, CBP was tasked with not only "correcting the record" to include appropriate information regarding communications by a third-party, but also a "reconsideration by Customs of the allegations of evasion 'anew' based on the complete record." *See* Remand Order (ECF No. 26) at 10; *see also id.* (remanding "all issues" for "full consideration of the complete record"). It took several months for the updated record to be completed and for parties to submit rebuttal information and written arguments. On remand, CBP engaged in an additional review to determine whether its factual determinations would change in view of the complete record, including the communications with the "third party." CBP also reviewed additional importation documentation that was submitted by the parties, which was a time-consuming and labor-intensive process, to determine whether raw materials were indeed present in the manufacturer's facility and were being used to create the CSBW fittings that were being imported.

Additionally, because this Court ordered a remand regarding "all issues" for "full consideration of the complete record," CBP reviewed the additional written arguments submitted by plaintiffs during the remand proceeding, in which they explicitly raised the scope issue CBP now seeks to refer. Plaintiffs argued at length that "[t]he Order does not cover finished CSBW

fittings from Vietnam," and that "[t]he Order does not cover finished CSBW fittings manufactured in Vietnam using rough/stamping parts from China."  *See* Norca's Written Arguments (attached as Exhibit A) at 8–11.[1]  These arguments were based in large part on documentation that CBP does not ordinarily review in this context, including documentation concerning Commerce's anti-circumvention determinations as to different countries of alleged manufacture (not Vietnam) where minor finishing processes were occurring.  In view of plaintiffs' arguments, which focused on Commerce's prior decisions, CBP determined that a referral of the scope issue to Commerce was necessary under the Enforce and Protect Act (EAPA).  *See* 19 U.S.C. § 1517(b)(4)(A) (requiring that CBP "shall" make a covered merchandise referral to Commerce when it is "unable to determine whether the merchandise at issue is covered merchandise").

Second, Plaintiffs argue that a covered merchandise referral is unnecessary because "Commerce already decided the precise issue as to why the subject product here is not within the scope of the Order."  Opp. at 3.  This is incorrect.  As plaintiffs explained in their motion for judgment on the administrative record:  "To date, there is no ruling by Commerce that CSBW fittings produced in Vietnam using rough or stamping parts produced in China are included within the scope of the Order.  **No Commerce scope or circumvention ruling covers that specific situation**."  Norca MJAR (ECF No. 21) at 8 (emphasis added).[2]  Indeed, in its written arguments submitted to CBP on remand, Norca argued that "Commerce has not determined that merchandise completed in Vietnam using subject China-origin inputs (i.e., rough/stamping parts as opposed to unfinished CSBW fittings) is within the scope of Commerce's Order," Exhibit A at

---

[1] IPPG submitted a letter joining in Norca's written arguments.
[2]  IPPG adopted Norca's motion in full.  *See* IPPG Mot. (ECF No. 22) at 2.

10.  Simply put, CBP agrees that Commerce is the appropriate agency to make and clarify this scope determination.

Third, Plaintiffs argue that a covered merchandise referral is "not permissible at this stage" and may only be conducted during the initial investigation.  Opp. at 4–5.  First, the plain text does not support a limitation as to when CBP may request such a determination from Commerce.  *See* 19 U.S.C. § 1517(b)(4)(A).  Plaintiffs' reliance on the general deadline for CBP to make EAPA determinations, Opp. at 4 (citing 19 U.S.C. § 1517(c)(1)), is misplaced and nonsensical because under such an interpretation, all court-ordered remands for CBP to reconsider a determination would be prohibited as untimely if CBP's new determination would be issued more than 300 days from the initiation of the investigation.  Moreover, plaintiffs' attempt to transmute the absence of a limitation on the timing of CBP's referral to Commerce into an absence of *authority* is not only unpersuasive but contravenes clear recent caselaw in this Court.  In *FedMet Resources Corporation v. United States*, this Court granted a motion to stay the case when, during a remand, CBP decided to seek a covered merchandise referral from Commerce pursuant to 19 U.S.C. § 1517(b)(4)(A).  *See FedMet Resources Corporation v. United States*, Case No. 21-00248, at ECF No. 44 (CIT June 7, 2022).  In fact, the proposed schedule in defendant's motion to stay in this case mirrors the schedule ordered in the *FedMet* case.[3]

_____

[3] In an email to this Court's case manager, plaintiffs expressed "concern" that "Commerce may feel pushed to rush things –i.e., respondents not given sufficient time to reply to any Commerce questions."  *See* Email from Peter Koenig to Bret Vallacher and Steve Taronji (Jul. 16, 2022) (attached as Exhibit B).  The timeline for Commerce's covered merchandise review is outlined in 19 C.F.R. § 351.227, which is not modified by defendant's proposed order (ECF No. 27).  Accordingly, there is no reason to be concerned about Commerce being "rush[ed]" since Commerce's review would be conducted in accordance with the usual timing that governs covered merchandise referrals.  Plaintiffs also argued that this process would amount to a full "do over" of the investigation.  *See* Exhibit B.  This is incorrect.  As explained above, CBP has

Finally, Norca and IPPG argue that defendant should "not be permitted to compound . . . unfairness and continuing hardship" by allowing a scope referral. Opp. at 5. But such a referral would only seem "unfair" if this Court ignored the above context and disregarded that the referral is CBP's rational response to the arguments that Norca made during the remand proceedings. And plaintiffs' assertion that a referral constitutes a "hardship" to them is premised on their untenable proposal to vacate CBP's determinations right now, thereby permitting plaintiffs' continued importation without appropriate agency (or judicial) review of whether their importation constitutes evasion.

Instead, such a referral would serve the interests of the parties and of justice because it will either (a) end this case (with a favorable result to plaintiffs) in the event that Commerce effectively invalidates CBP's finding of evasion by determining that rough fittings are outside the scope of the Order, or (b) significantly narrow the remaining issues before the Court if Commerce determines that the rough fittings are covered by the Order. Under either scenario, staying this case until Commerce issues a covered merchandise determination will result in a significant conservation of both the Court's and the litigants' resources. *See, e.g.*, *Jiaxing Bros. Fastener Co. v. United States*, 179 F. Supp. 3d 1156, 1160 (Ct. Int'l Trade 2016) (granting a stay because it could streamline the proceeding, could "result in the dismissal of one or more" claims, and there was no evidence that "a stay will work any real hardship"). Far from seeking to indefinitely stay this action, CBP is seeking to use all available administrative options to ensure accuracy and completeness in finalizing its remand redetermination. A referral to Commerce

---

been investigating and compiling information during the remand, and merely seeks to allow
Commerce to render a decision regarding the scope of an order it issued.

also preserves judicial and administrative resources because, without a referral, there is a

likelihood that this Court will simply *order* this same referral later after continued litigation.

## **CONCLUSION**

For these reasons, the United States respectfully requests that this Court stay this action

to permit a referral to the Department of Commerce pursuant to the EAPA.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:

SHAE WEATHERSBEE
Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel


July 20, 2022

s/ Bret R. Vallacher
BRET R. VALLACHER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-0465
Facsimile: (202) 305-2062
Email: bret.r.vallacher@usdoj.gov

Attorneys for Defendant



Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com


Jeremy W. Dutra
T   +1 202 626 6237
jeremy.dutra@squirepb.com


**PUBLIC DOCUMENT**

May 18, 2022

**Via E-FILING AND E-MAIL**

Brian Hoxie
Division Director
U.S. Customs and Border Protection
Office of Trade, Trade Remedy Law Enforcement Directorate
Enforcement Operations Division
1300 Pennsylvania Avenue, NW
Washington, DC 20229

Attention: Deborah Scott

**Re:     Remand Proceeding in EAPA Consolidated Case Number 7335
         Norca Industrial Company, LLC's Written Arguments**


Dear Ms. Scott:

Norca Industrial Company, LLC ("Norca") submits the following written arguments as permitted by the communication from U.S. Customs and Border Protection's ("CBP") dated May 12, 2022.  As this matter is on remand from the U.S. Court of International Trade, these arguments address the evasion determination and associated findings by CBP.  As outlined in these arguments, CBP acted beyond its authority, and thus acted unlawfully, when it determined that Norca engaged in evasion of Anti-Dumping Duty Order A-570-814[1] (the "*Order*").

---

[1] *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57

47 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP

Brian Hoxie
May 18, 2022

**VIA E-MAIL**

## CERTIFICATION AND INFORMED CONSENT STATEMENT

On behalf of the party making this submission, the undersigned certifies that all statements in this submission (and any attachments) are accurate and true to the best of his knowledge and belief.

On behalf of the party making this submission, the undersigned certifies that any information for which business confidential treatment has not been requested pursuant to 19 C.F.R. §165.4(a), may be released for public consumption. Further, in accordance with 19 C.F.R. §165.4(d), this information is either the information the party making the submission has a right to make public (*e.g.*, information from its own business records) or information that was publicly obtained or in the public domain.

On behalf of the party making this submission, the undersigned certifies that he will advise CBP promptly of any knowledge of or reason to suspect that the covered merchandise poses any health or safety risk to U.S. consumers pursuant to 19 C.F.R. §165.7(a).

Finally, on behalf of the party making this submission, the undersigned certifies his understanding and consent that the information provided for in 19 C.F.R. §165.11(b)(1) through (5) may be released for public consumption.

Jeremy W. Dutra

*Counsel for Norca Industrial Company, LLC*

---

Fed. Reg. 29,702 (Jul. 6, 1992).

Squire Patton Boggs (US) LLP                                    Brian Hoxie
                                                               May 18, 2022
**VIA E-MAIL**

# TABLE OF CONTENTS

I.     PARTY SUBMITTING ADDITIONAL WRITTEN ARGUMENTS ............................. 6

II.    SUMMARY OF THE ARGUMENT ...................................................... 6

III.   ARGUMENT ........................................................................ 7

    A.   Norca did not enter covered merchandise into the United States through
        evasion. ........................................................................ 7

        1.   The *Order* does not cover finished CSBW fittings from Vietnam. ........... 8

        2.   The *Order* does not cover finished CSBW fittings manufactured in
              Vietnam using rough/stamping parts from China. ................................... 10

    B.   The basis of CBP's evasion determination—namely, its finding that it
        could not confirm BW Fittings purchased seamless pipe—is contrary to
        record evidence. ................................................................ 14

        1.   CBP's own attaché report confirms that BW Fittings purchased
              and used seamless pipe in its production of finished CSBW
              fittings. ...................................................................... 14

        2.   Contrary to CBP's claim, documents that Norca and BW Fittings
              produced during the investigation confirm that BW Fittings
              imported seamless pipe to produce finished CSBW fittings in
              Vietnam; there is no evidence to the contrary. ......................... 16

        3.   The records that Norca's customer submitted to CBP during the
              investigation that CBP failed to disclose or consider in its evasion
              determination contradict CBP's finding that BW Fittings did not
              purchase seamless pipe. .................................................... 20

    C.   The alleger submitted a response to Norca's request for administrative
        review that undermines both the allegations and CBP's evasion
        determination. ................................................................ 24

    D.   CBP deprived Norca of due process by basing the final determination on
        new allegations of perceived document discrepancies that CBP never
        provided an opportunity to explain—and compounds that violation by
        refusing to accept supplemental information from Norca and BW Fittings. ........ 24

    E.   CBP improperly and unreasonably draws adverse inferences against Norca
        based on alleged discrepancies and issues with certain information BW
        Fittings provided during the investigation. ....................................... 26

IV.    CONCLUSION ...................................................................... 32

Squire Patton Boggs (US) LLP

Brian Hoxie
May 18, 2022

**VIA E-MAIL**

# TABLE OF AUTHORITIES

## Cases

*Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311 (CIT 2015)..........................................8

*Bell Supply Co., LLC v. United States*, 179 F. Supp. 3d 1082 (CIT 2016).............................7

*Deacero S.A. de C.V. v. United States* 817 F.3d 1332 (Fed. Cir. 2016) .................................9, 10

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) ...................................7, 8, 11

*Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778 (Fed. Cir. 1995) .................11

*Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*, 28 CIT 1185 (2004)  .................26

*Hyundai Hevy Indus. Co. v. United States*, 485 F.Supp.3d 1380 (CIT 2008) ..............................19

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ...........................................19

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed. Cir. 2012)................25

*Ta Chen Stainless Steel Pipe v. United States*, 23 CIT 804 (1999) ...............................................26

## Statutes

19 U.S.C. § 1517(a)(3).........................................................................................................................7

19 U.S.C. § 1517(c)(1)(A)...................................................................................................................7

19 U.S.C. § 1673...................................................................................................................................7

19 U.S.C. § 1673a(b)(3)(A)................................................................................................................7

19 U.S.C. § 1673e(a)(2).......................................................................................................................7

19 U.S.C. § 1677(25)...........................................................................................................................7

19 U.S.C. § 1677b(a)(3).......................................................................................................................7

19 U.S.C. § 1677j...................................................................................................................................7

19 U.S.C. § 1677j(b)............................................................................................................................9

## Regulations

19 C.F.R. § 165.6(a)...........................................................................................................................25

19 C.F.R. § 165.16..............................................................................................................................10

19 C.F.R. § 165.41(f).........................................................................................................................26

19 C.F.R. § 351.202(b)(5)...................................................................................................................8

Squire Patton Boggs (US) LLP

Brian Hoxie
May 18, 2022

**VIA E-MAIL**

## Administrative Orders

*Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57 Fed. Reg. 29,702 (Jul. 6, 1992)........................................................1, 10

*Carbon Steel Butt-Weld Pipe Fittings From Brazil, China, Japan, Taiwan, and Thailand*, Inv. Nos. 731-TA-308-310, 520, and 521 (Second Review), USITC Pub. 3809 (October 2005) ........................................................................................11

*Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 84 FR 29164 (June 21, 2019)........................................................................................9, 12

*Certain Carbon Steel Butt Weld Pipe Fittings from China and Thailand*, Inv. Nos. 731 TA 520 and 521 (Final), USITC Pub. 2528 (June 1992)........................................12

*Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China; Affirmative Final Determination of Circumvention of Antidumping Duty Order*, 59 FR 15155 (March 31, 1994)..........................................................................................9

*Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order*, 84 FR 2813, 2815 (Feb. 8, 2019)..................................................................8

Squire Patton Boggs (US) LLP                                      Brian Hoxie
                                                                 May 18, 2022
**VIA E-MAIL**

## I.     PARTY SUBMITTING ADDITIONAL WRITTEN ARGUMENTS

Norca is located at 1 Hollow Lane, Suite 200, Lake Success, New York 11042 (selim@norcaind.com). Squire Patton Boggs (US) LLP, located at 2550 M Street, NW, Washington, DC 20037, represents Norca in this matter. The primary attorneys are Jeremy W. Dutra (jeremy.dutra@squirepb.com) and Peter Koenig (peter.koenig@squirepb.com).

## II.    SUMMARY OF THE ARGUMENT

CBP incorrectly found evasion. As the investigation showed, Norca did not enter merchandise into the United States through evasion. The subject entries of finished carbon steel butt weld pipe fittings imported into the United States by Norca were manufactured in Vietnam. Thus, these subject entries were not entered into the United States through evasion. Further, CBP rested its finding of evasion on a fundamental error that "rough" fittings (or "stamping parts") are "unfinished" pipe fittings within the scope of the *Order*. This is an inaccurate interpretation of the *Order* and thus further renders the finding of evasion unfounded. CBP also relied upon its finding that BW Fittings did not purchase seamless pipe, but the record does not support this finding. The record demonstrates that BW Fittings purchased seamless pipe beginning in September 2019 (before CBP received the allegations) and BW Fittings used the purchased seamless pipe to produce finished CSBW fittings in Vietnam. In fact, the record shows that this is consistent with CBP's findings during its on-site visit to BW Fittings.

In its evasion determination, CBP drew and relied upon adverse inferences, including drawing and relying upon adverse inferences based on information provided by BW Fittings. However, at no point did CBP provide Norca or BW Fittings with the opportunity to remedy or explain these supposed issues, much less notice of the concerns before the decision, thus depriving Norca of due process. CBP has continued to compound that error by refusing to permit Norca and

6

BW Fittings to submit—and rejecting submission of—information and documents specifically

addressing and refuting CBP's various "findings" in its initial evasion determination.

For these reasons, explained in detail below, Norca requests that CBP revise its

determination and find that Norca did not evade the *Order.*

## III.   ARGUMENT

### A.   Norca did not enter covered merchandise into the United States through evasion.

CPB contends that the country of origin of finished CSBW fittings produced in Vietnam

using "rough or semi-finished pipe fittings from China" would remain China and thus subject to

the *Order*.[2]  CBP's determination is contrary to law.

Congress authorized CBP to investigate and determine whether "*covered merchandise* was

entered into the customs territory of the United States through evasion."[3]  Congress defined

"covered merchandise" as "merchandise that is subject to—(A) an antidumping duty order issued

under {19 U.S.C. § 1673e} . . . ."[4]

The language of a Commerce antidumping duty order dictates its scope.[5]  As such,

merchandise is subject to a Commerce antidumping duty order only if it is: (1) the type of

merchandise described in the order, and (2) from the particular country or countries covered by

the scope of the order as written by Commerce."[6]  Merchandise that does not meet both

---

[2] Determination at 5.
[3] 19 U.S.C. § 1517(c)(1)(A) (emphasis added).
[4] 19 U.S.C. § 1517(a)(3).
[5] *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002); *see also id.* at 1096-97 ("Although the petition and the investigation proceedings may aid in Commerce's interpretation of the final order, the order itself reflects the decision that has been made as to which merchandise is within the final scope of the investigation and is subject to the order").
[6] *Bell Supply Co., LLC v. United States*, 179 F. Supp. 3d 1082, 1091-92 (CIT 2016); *see also* 19 U.S.C. §§ 1673, 1673a(b)(3)(A); 1673e(a)(2), 1677(25), 1677b(a)(3), 1677j; 19 C.F.R. §§

Squire Patton Boggs (US) LLP                                    Brian Hoxie
                                                                May 18, 2022
**VIA E-MAIL**

requirements is, by definition, outside the scope of the Commerce antidumping order.  Here, the merchandise Norca imported does not meet either requirement.

### 1. The *Order* does not cover finished CSBW fittings from Vietnam.

Commerce's *Order* covers "carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form" from the People's Republic of China.[7]  Norca, however, did not import finished or unfinished CSBW fittings from <u>China</u>. Norca instead imported CSBW fittings from <u>Vietnam</u> that were processed/produced in <u>Vietnam</u> using either seamless pipe or rough/stamping parts from China.

Although Commerce, when drafting an antidumping order, can include processing operations performed in third countries, "thereby including those specific production processes occurring in third countries within the order's scope,"[8] it did not do so here.  The language of Commerce's *Order* against certain Chinese CSBW fittings makes no mention of goods produced or processed in other countries.

CBP cannot expand the scope of the *Order* to encompass third country production.[9] Congress instead authorized Commerce (not CBP) to conduct anti-circumvention inquiries to determine if "certain types of articles are within the scope of a duty order, even when the articles

---

351.202(b)(5), (6); *Duferco*, 296 F.3d at 1096.

[7] *Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 84 FR 29164 (June 21, 2019).

[8] *Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311, 1324-25 (CIT 2015).  *See, e.g.*, *Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order*, 84 FR 2813, 2815 (Feb. 8, 2019) ("Subject merchandise includes common alloy sheet that has been further processed in a third country, including but not limited to annealing, tempering, painting, varnishing, trimming, cutting, punching, and/or slitting, or any other processing that would not otherwise remove the merchandise from the scope of the order if performed in the country of manufacture of the common alloy sheet").

[9] *Cf. Duferco Steel*, 296 F.3d at 1097 ("The scope of the order can be clarified but it cannot be changed by the interpretive process").

do not fall within the order's literal scope" because for instance they involve third-country processing not covered by the order.[10]  Such inquiries permit Commerce to include within the scope of an antidumping duty order merchandise completed or assembled in foreign countries using merchandise subject to a duty order; provided Commerce (not CBP) makes five enumerated, statutorily required findings.[11]

While Commerce conducted an anti-circumvention investigation of China-origin unfinished (not "rough") CSBW fittings processed in Thailand[12] and Malaysia,[13] it conducted no such investigation as to Vietnam.  Nor are the results of Commerce's anti-circumvention determinations as to Thailand and Malaysia automatically applicable to Vietnam.  Commerce's initiation of separate investigations and case law underscore this point.

In 1994, for example, Commerce determined that imports of pipe fittings finished in Thailand from unfinished (not "rough") pipe fittings produced in China constituted circumvention of Commerce's *Order*.  If a circumvention determination under an antidumping duty order were automatically applicable to other third countries, there would have been no reason for Commerce to conduct the circumvention inquiry involving Malaysia, which involved similar allegations that imports of CSBW pipe fittings completed in Malaysia from finished or unfinished CSBW fittings produced in China were circumventing the *Order*.  The fact that Commerce conducted specific third country inquiries involving similar allegations underscores that the *Order* does not extend to

---

[10] *Deacero S.A. de C.V. v. United States* 817 F.3d 1332, 1337 (Fed. Cir. 2016).
[11] 19 U.S.C. § 1677j(b).
[12] *Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China; Affirmative Final Determination of Circumvention of Antidumping Duty Order*, 59 FR 15155 (March 31, 1994).
[13] *Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 84 FR 29164 (June 21, 2019).

Squire Patton Boggs (US) LLP                                          Brian Hoxie
                                                                      May 18, 2022
**VIA E-MAIL**

CWBW fittings processed in Vietnam using rough/stamping parts produced in China.

Further, as the Court of International Trade (and Commerce) recognize, such inquiries "are inherently fact-specific," such that "{e}ach case is highly dependent on the facts on the record, and must be analyzed in light of those specific facts."[14]  Because Commerce has not determined that merchandise completed in Vietnam using subject China-origin inputs (*i.e.*, rough/stamping parts as opposed to unfinished CSBW fittings) is within the scope of Commerce's *Order*, CBP has no basis to extend the scope of the *Order* as it did to arrive at its evasion determination here.

There can be no determination of evasion if the imported product under investigation is not merchandise subject to an antidumping duty order.  Finished CSBW fittings imported from Vietnam are, by law, not covered by the *Order*.  There was no legal basis for CBP to deem the imported products from BW Fittings "covered merchandise."  CBP offers none.

In fact, CBP's own regulations provide for CBP to refer to Commerce questions about whether "merchandise described in an allegation is properly within the scope of an antidumping or countervailing duty order" of Commerce.[15]  CBP failed to do so.  Because CBP's reading and application of Commerce's *Order* is contrary to law, CBP lacked substantial evidence to support its determination that the country of origin of the finished CSBW fittings produced and imported from Vietnam are China origin instead of Vietnam origin.

> 2.    **The *Order* does not cover finished CSBW fittings manufactured in Vietnam using rough/stamping parts from China.**

As noted, the *Order* covers "carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form" from China.[16]

---

[14] *Deacero S.A. de C.V. v. United States*, 942 F. Supp. 2d 1321, 1331 (CIT 2013).
[15] 19 CFR § 165.16.
[16] *Order*, 57 Fed. Reg. 29,702.

CBP claims that "rough, unfinished (or semi-finished) CSBW fittings from China that undergo finishing processes (e.g., re-forming, sizing, shot blasting, cleaning, machine beveling, grinding, die stamping or painting processes) in a third country should remain country of origin China upon importation into the United States" under Commerce's *Order*.[17]  CBP's unsupported and expansive reading of the *Order* is legal error as it impermissibly changes the scope of the *Order* to include merchandise not included within the text of the *Order* nor included in the U.S. International Trade Commission ("USITC") injury determination from the original investigation.[18]

Manufacturing CSBW fittings involves three production stages, as recognized by Commerce, the USITC, and the U.S. producer petitioners.[19]  The first stage involves transforming seamless carbon steel pipe "into the rough shape of an elbow, tee, reducer, etc., through a cold- or hot-forming (or forging) process," at which point, "the fittings are considered to be in a rough, 'as formed,' state."  During the second stage, the rough fittings "undergo a 'reforming' or 'sizing' operation to ensure that the fitting will match the pipe to which it is to be welded."  The third production stage involves "finishing steps," including "shot blasting, or other cleaning, machine beveling, boring and tapering, grinding, die stamping, inspection, and painting."[20]

---

[17] Determination at 5.

[18] *Duferco Steel*, 296 F.3d at 1097 (while the scope of an order may be clarified, "it cannot be changed in a way contrary to its terms"); *Eckstrom Indus. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (refusing to give an order the broad interpretation urged by the government because such a broad construction "belied by the terms of the Order itself"); *Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995) (rejecting interpretation that impermissibly modified the scope of the order).

[19] The alleger in the EAPA investigation, Allied, is not the U.S. petitioner; rather, it is an importer.

[20] *Carbon Steel Butt-Weld Pipe Fittings From Brazil, China, Japan, Taiwan, and Thailand*, Inv. Nos. 731-TA-308-310, 520, and 521 (Second Review), USITC Pub. 3809 (October 2005) at I-14.

An "unfinished pipe fitting" covered by the *Order* is not, as CBP contends, a "rough" CSBW pipe fitting.  To the contrary, the original investigation confirmed an "unfinished" fitting is "a fitting that has been advanced after forging but which requires at least one more processing step (i.e., shot blasting, machine beveling, boring and tapering, grinding, die stamping, inspecting or painting) to finish the fitting."[21]  In other words, a covered "unfinished" CSBW pipe fitting is a pipe fitting that has undergone the first and second stages of production such that only those operations in the third stage remain to be performed.[22]

The description of the production steps from the initial investigation that resulted in Commerce's *Order* is consistent with BW Fittings' responses to CBP's requests for information during the investigation:

> *First*, rough and stamping part {sic} are the same.  The terminology is used interchangeably.  They are both created after long pipe is cut into short piece of long pipe and then gone through hot/cold forming process to create rough form of elbow, tee, reducer . . . .
>
> \*          \*          \*
>
> *Second,* as to the difference between rough and carbon steel butt-weld fittings (CSBW), the later refers to finished carbon steel butt-weld fittings. In terms of production process, the difference is that rough products undergo processing steps, including: (i) beveling; (ii) *sizing*; (iii) grinding; (iv) shot blasting; (v) heat treatment; and (vi) painting to become finished CSBW.

---

[21] *Certain Carbon Steel Butt Weld Pipe Fittings from China and Thailand*, Inv. Nos. 731 TA 520 and 521 (Final), USITC Pub. 2528 (June 1992) at 4 n.6.  When considering whether a particular product is included within the scope of an antidumping duty order, it is appropriate to consider the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of {Commerce} . . . and the Commission."  19 C.F.R. § 351.225(k)(1).

[22] Commerce determined in the Malaysian anti-circumvention investigation—consistent with domestic producers' allegations—that performing the first and/or second stages of production render the product outside the scope of the *Order*.  *See* Memorandum, *Issues and Decision Memorandum for the Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China* (Dept. of Commerce June 14, 2019) at 16-17.

Squire Patton Boggs (US) LLP

**VIA E-MAIL**

Brian Hoxie
May 18, 2022

\*     \*     \*

> *Third*, as to differences between rough and semi-finished CSBW, the later has degree of finish better than the former. In terms of production process, rough products must undergo the following steps to become semi-finished CSBW: (i) beveling; (ii) *sizing*; (iii) grinding; and (iv) shot blasting.[23]

As BW Fittings confirmed, rough (or stamping) parts are the result of the first production step—*i.e.*, they still must undergo the second and third stages of production. Consistent with the USITC's description of subject merchandise during the initial investigation that led to the *Order*, and the understanding of Commerce in administering its *Order*, the rough parts BW Fittings imported from China are not "unfinished" CSBW fittings that are subject to the *Order*.

BW Fittings stated in its response to the RFI that all finished CSBW fittings that it exported to the United States "underwent at least" the second and third production steps in Vietnam,[24] which, in conformance with Commerce's *Order*, is not subject to it. CBP identifies no facts to the contrary, nor can it.

While BW Fittings did not have the equipment to perform <u>hot</u> sizing until it acquired two electric furnaces (clearing Vietnam customs around May 31, 2019) and began using it in production on June 1, 2019,[25] it had the capability to perform <u>cool</u> resizing throughout the period of investigation. For example, the record confirms BW Fittings acquired two elbow forming machines, which cleared Vietnam customs around July 3, 2018 (bill of lading no. KLS1801130), and began using that equipment during production on August 1, 2018—all well before the period of investigation.[26]     Likewise, BW Fittings acquired two four-column hydraulic presses

---

[23] BW Fittings' Narrative Resp. to Supp. Req. for Information at 13-14.
[24] BW Fittings Narrative Resp. to Req. for Information at 16.
[25] BW Fittings Ex. S9; *see also* BW Fittings Ex. 18_5 at 1, 68-74.
[26] BW Fittings Ex. S9; *see also* BW Fittings Ex. 18_10 at 1-3.

(Production Range: 1/2inch to 12 inch), which cleared Vietnam customs around July 3, 2018 (bill of lading no. TSNCB18005172) and began using that equipment during production on September 1, 2018—again, before the period of investigation.[27]  Substantial evidence—indeed, unrebutted evidence—thus confirms that BW Fittings had the capability and capacity to perform, and in fact did perform, the second and third stages of production throughout the period of investigation.

Based on the language of the *Order*, as understood during the original investigation, "rough" fittings (or "stamping parts") are not "unfinished" CSBW fittings within the scope of the *Order*.  A fact that even the alleger Allied, through its silence throughout the investigation, did not dispute.  Because CPB's evasion determination rests on this fundamental error, its determination that finished CSBW fittings produced in Vietnam using Chinse-origin rough/stamping parts is not supported by substantial evidence and is not in accordance with law.

> **B.      The basis of CBP's evasion determination—namely, its finding that it could not confirm BW Fittings purchased seamless pipe—is contrary to record evidence.**

CBP admits that the *Order* does not cover CSBW fittings produced in Vietnam using Chinese-origin seamless pipe.  CBP nevertheless claims that evasion occurred because CBP "did not identify any raw material documentation to support the purchase of any seamless pipe (or steel plate) by BW Fittings during the POI."[28]  CBP's position is unsupported by any evidence.

> **1.      CBP's own attaché report confirms that BW Fittings purchased and used seamless pipe in its production of finished CSBW fittings.**

On January 9, 2020, the CBP attaché visited BW Fittings facility to conduct a site visit.[29] During the site visit, the attaché acknowledged substantial production equipment at the BW

---

[27] BW Fittings Ex. S9; *see also* BW Fittings Ex. 18_12.
[28] Determination at 8-9.
[29] CBP Attaché Report (Jan. 15, 2020) at p. 1.

Squire Patton Boggs (US) LLP                                    Brian Hoxie
                                                               May 18, 2022
**VIA E-MAIL**

Fittings facility used to transform seamless pipe into finished CSBW fittings.[30]  The CBP attaché
further witnessed BW Fittings using in the production of CSBW fittings in Vietnam, and the
report confirms that the attaché identified and photographed seamless pipe that BW Fittings used
to produce the finished CSBW fittings at its facility.[31]

Further confirming the CBP attaché's visit, Norca submitted site visit reports and videos
demonstrating that BW Fittings had the capacity and capability to transform—and, in fact, was
transforming—seamless pipe into finished CSBW fittings at BW Fitting's Vietnam facility.[32]
Norca's customer, moreover, submitted documents to CBP concerning a November 2019 visit to
BW Fittings' facility, including photographs and videos showing seamless pipe raw material
being transformed into fittings and confirmation that BW Fittings had the capacity and capability
to produce CSBW fittings from seamless pipe.[33]

CBP did not reference these first-hand accounts in its evasion determination, nor did it
challenge the veracity of the accounts.  Nor could CBP challenge those accounts given the site
visit reports Norca submitted are consistent with CBP's own observations.  These facts alone
render CBP's finding and determination irrational.

---

[30] *Id.* at 3.

[31] *Id.* at 3-4.

[32] Norca Resp. to Req. for Information, Section B Narrative at 6; Norca Resp. to Req. for
Information, Ex. B13; *see also* Norca Resp. to Supp. Req. for Information, Narrative at 3-5; Norca
Resp. to Supp. Req. for Information, Ex. A8 (machinery videos); Norca Resp. to 2d Supp. Req.
for Information, Narrative at 1 and Ex. A (equipment list).

[33] *See* June 12, 2020 email from Norca customer; Fitting Vendor Review submitted by Norca
customer; June 17, 2020 email from Norca customer; June 29, 2020 email from Norca customer;
*see also* photographs and videos that Norca customer provided to CBP in response to the RFI on
or about June 17, 2020.

Squire Patton Boggs (US) LLP

**VIA E-MAIL**

Brian Hoxie
May 18, 2022

> **2.    Contrary to CBP's claim, documents that Norca and BW Fittings produced during the investigation confirm that BW Fittings imported seamless pipe to produce finished CSBW fittings in Vietnam; there is no evidence to the contrary.**

Both Norca and BW Fittings submitted bills of lading, Vietnam customs declarations, material receiving documentation, and test reports that evidence BW Fittings' importation and use of seamless pipe during the POI to produce the CSBW fittings Norca imported.[34]

Although BW Fittings' raw material invoices for seamless pipe contained a numeric description, the material name and corresponding HS code are indicated on bills of lading and other documents BW Fittings produced in Exhibit 16, which confirm the purchase and import of seamless pipe under the following purchase orders/contracts:

- PO 505.005092 – Contract BW190049[35]
- PO 505.005093 – Contract SC-BW190050[36]
- PO 505.005095 – Contract SC-BW190052[37]
- PO 505.005100 – Contract BW190057[38]
- PO 505.005101 – Contract SC-BW190058[39]
- PO 505.005102 – Contract BW190059[40]
- PO 505.005103 – Contract SC-BW190060[41]
- PO 505.005104 – Contract SC-BW190061[42]
- PO 505.005105 – Contract SC-BW190062[43]

Norca submitted additional documents during remand that confirm BW Fittings' purchase

---

[34] *See, e.g.*, BW Fittings Exhibits 6, 16; Norca Remand Exhibit NR1; *see also* Norca Resp. to Req. for Information, Ex. B19(a-g) at 20-22 and Ex. B19(j-u) at 3-33; Norca Resp. to 2d Supp. Req. for Information, Section 2 Ex. At 588-770, 946-1179, 1136-1495, 1616-1807, 1940-2110, 2228-2323, 2419-46, 2457-2519, 2659-2711, 2729-39, 2756-85, 2796-2858, 2984-91, 3052-61.
[35] BW Fittings Ex. 16_21 at 40-41.
[36] BW Fittings Ex. 16_22 at 28, 32, 29, 46, 50, -47, 65, 69, 82, 86, 95, 99, 116, 120, 136-37, 139.
[37] BW Fittings Ex. 16_23 at 28, 32, 35, 48, 52, 67, 71, 80, 84, 101, 105.
[38] BW Fittings Ex. 16_7 at 21, 34-35.
[39] BW Fittings Ex. 16_24 at 28, 32, 49, 53.
[40] BW Fittings Ex. 16_8 at 30, 38, 47, 62-63.
[41] BW Fittings Ex. 16_25 at 16.
[42] BW Fittings Ex. 16_26 at 16.
[43] BW Fittings Ex. 16_27 at 16.

Squire Patton Boggs (US) LLP

**VIA E-MAIL**

Brian Hoxie
May 18, 2022

and import of seamless pipe.[44]

The substantial increase in electric and water utility usage[45]—particularly from November 2019 through January 2020—coincides with BW Fittings' acquisition and use during production of the electric furnaces and bend saws, and the purchase and transformation of seamless pipe into finished CSBW fittings in Vietnam.  This too confirms that BW Fittings imported seamless pipe to produce finished CSBW fittings in Vietnam during the POI.

Notwithstanding the evidence submitted, CBP speculates, without any support, that BW Fittings did not purchase seamless pipe.  CBP's speculation does not withstand scrutiny.

First, CBP concluded that "the numeric descriptions in the {BW Fittings'} product code list and on the raw material invoices were for rough fittings."  This conclusion, however, is unsupported supposition, not based on the requisite statutory substantial evidence.  Indeed, CBP itself witnessed the production of finished CSBW fittings from seamless pipe by BW Fittings in Vietnam during its site visit.  In this remand, moreover, Norca provided information from BW Fittings confirming that the numeric description of three numbers is used for seamless pipes, wherein the first number is outside diameter, the second number is wall thickness, and the third number is length, which is in contrast to steel plate raw material in which the numeric description contains only two numbers, with the first number being wall thickness, and the second number being outside diameter.[46]

Based on the site visit, the bills of lading and customs declarations produced by BW Fittings, and the supplemental information Norca submitted, it is apparent that the numeric

---

[44] Norca Remand Ex. NR1 and NR2.

[45] *See* BW Fittings Ex. S2 at 58-65 (summary utility usage).

[46] Norca Objection to Rejection and Resubmission of Supplemental Information (May 16, 2022) at 3.

Squire Patton Boggs (US) LLP

Brian Hoxie
May 18, 2022

**VIA E-MAIL**

descriptions were for seamless pipe—there is no evidence otherwise. Indeed, careful examination of the records Norca and BW Fittings produced to CBP during the investigation demonstrate that CBP's finding is contrary to the evidence. For example, the records Norca produced for Entry No. 8E2-1234593-9—Norca purchase order no. 505/5096-1—confirms that Norca imported finished CSBW fittings that BW Fittings produced from seamless pipe.[47]

- According to bill of lading COAU7880277600, the seamless pipe (HTS 730490) BW Fittings purchased seamless pipe from Asia Piping Manufacturing Group Ltd. shipped to Vietnam on September 11, 2019.[48]

- The Vietnam customs declaration associated with this shipment also identifies the raw materials imported from Asia Piping to be seamless pipe.[49]

- The first two line items on the BW Fittings incoming product inspection record associated with the bill of lading identifies raw materials from heat no. 158148, with (1) 1307 pieces having measurements of 89.1 mm diameter, 7.1 mm W/T, and 0.330 m length, and (2) 25 pieces having measurements of 89.1 mm diameter, 7.1 mm W/T, and 0.180 m length.[50]

- The corresponding goods receiving note shows BW Fittings receiving the seamless pipe on September 19, 2019 under invoice 19090601. Line no. 12, which corresponds to invoice code 23, shows BW Fittings receiving 1307 pieces of seamless pipe from heat no. 158148 having measurements of 89 mm OD, 7 mm WT, and 330 m length.[51] Line no. 36, which corresponds to invoice code 4, shows BW Fittings receiving 25 pieces of seamless pipe from heat no. 158148 having measurements of 89 mm OD, 7 mm WT, and 180 m length.[52]

- Asia Piping invoice 19090601, which includes BW Fittings order no. BW/HK-190053, includes 1307 pieces of 89*7*330(mm) under invoice code 23 and 25 pieces of 89*7*180(mm) under invoice code 4.[53]

---

[47] Norca 2d Supplemental RFI Response, Exhibit C, Section 2 at p. 926.
[48] *Id.* at p. 946.
[49] *Id.* at pp. 947-971.
[50] *Id.* at p. 975.
[51] *Id.* at p. 977.
[52] *Id.*
[53] *Id.* at p. 1206.

- Asia Piping packing list 19090601, which includes BW Fittings order no. BW/HK-190053, includes 1307 pieces of 89*7*330 (mm) under item no. 23 and 25 pieces of 89*7*180 (mm) under item no 4.[54]

This is but one example highlighting that the records confirm not only that BW Fittings purchased seamless pipe, but also that the numerical description on the Asia Piping invoices correspond to seamless pipe.  CBP, however, eschewed this type of analysis—or even asking BW Fittings for such an explanation.  CBP's findings about seamless pipe cannot withstand scrutiny under this Court's review standard because the record evidence contradicts CBP's findings.

Second, CBP claims that BW Fittings shifted the timeline for when it began using seamless pipe during production—September 2019 in its RFI response and June 2019 in its response to the supplemental RFI.[55]  The explanation is not that BW Fittings sought to deceive CBP; rather, it is that the individual at BW Fittings misunderstood the supplemental question.  BW Fittings—as confirmed by record evidence—began importing machines used to convert seamless pipe to rough fittings in June 2019 and began importing seamless pipe in September 2019.[56]  Instead of seeking clarification on these perceived discrepancies, CBP elected to speculate.  Speculation is not substantial evidence.[57]

Third, CBP further attempts to justify its determination that BW Fittings did not purchase seamless pipe by observing that BW Fittings also purchased rough parts in December 2019 and

---

[54] *Id.* at pp. 1207-08.
[55] Determination at 9.
[56] *See* BW Fittings Ex. S9; *see also, e.g.*, BW Fittings Ex. 18_5; BW Fittings Ex. 18_9.
[57] *See Hyundai Hevy Indus. Co. v. United States*, 485 F.Supp.3d 1380, 1399 (CIT 2008) (agency may not base its decision on speculation); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'").

January 2020 during the period in which BW Fittings stated it was purchasing seamless pipe.[58] CBP's observation, however, is irrelevant and does not support its determination.  As noted, Commerce's *Order* does not cover rough parts from China.  Furthermore, there is nothing inconsistent with a manufacturer intermittently supplementing the purchase of seamless pipe with rough parts to meet demand requirements.  The fact that BW Fittings purchased some rough parts does not mean it did not purchase seamless pipe.  CBP's conclusion is irrational, particularly in view of the documentation it chose to ignore.

The record does not support CBP's findings or evasion determination.  The documents BW Fittings produced during the investigation are consistent with CBP's own on-site observations, and demonstrate that BW Fittings purchased seamless pipe beginning in September 2019—before CBP received Allied's allegations—and used that seamless pipe to produce finished CSBW fittings in Vietnam that BW Fittings sold to Norca.  CBP bases its claims that BW Fittings did not purchase and use seamless pipe in its production process entirely on speculation and unreasonable inferences—the very definition of arbitrary and capricious action and violation of the legal requirement that its decisions be based on substantial evidence.

> **3.      The records that Norca's customer submitted to CBP during the investigation that CBP failed to disclose or consider in its evasion determination contradict CBP's finding that BW Fittings did not purchase seamless pipe.**

At the core of CBP's evasion determination is its rejection that BW Fittings purchased seamless pipe.  CBP made this finding because it "concluded that the numeric descriptions on raw material invoices were actually for rough fittings . . . ."[59]  Leaving aside that CBP's finding is

---

[58] Determination at 8.
[59] *Id.*

Squire Patton Boggs (US) LLP

**VIA E-MAIL**

Brian Hoxie
May 18, 2022

speculation contradicted by record evidence, the materials Norca's customer submitted during the investigation, per CBP's request, also contradict CBP's findings and conclusions.

First, IMG_20191113_114205312 from the photographs the third party submitted per CBP request in this investigation, shows seamless pipe in BW Fittings' facility, which is contrary to CBP's speculation that it could not confirm that "raw material purchases consisted of seamless pipe as claimed by BW Fittings."[60]



Second, IMG_20191113_114227177 (002) and IMG_20191113_114213703 each show cut seamless pipe of varying dimensions, again confirming BW Fittings' statements that it purchased and used seamless pipe to produce in Vietnam finished CSBW fittings for Norca.

---

[60] The metadata and file properties of the photographs submitted to CBP confirm the third-party photographs were taken: (a) on November 13, 2019, and (b) at a location, as confirmed by the latitude and longitude coordinates, in the Long Giang Industrial Park, Tan Lap 1 Commune, Tan Phuoc District, Tien Giang, Vietnam where BW Fittings' facility is located.  As such, they are of unquestioned reliability.

Squire Patton Boggs (US) LLP

Brian Hoxie
May 18, 2022

**VIA E-MAIL**





Third, IMG_20191113_114010088, IMG_20191113_114013796_HDR, and

IMG_20191113_114023149, when compared to IMG_20191113_114227177 (002), show tags

on seamless pipe at BW Fittings' Vietnam facility with "numeric descriptions," *e.g.*,

219mm*9.8mm*1090mm.



Squire Patton Boggs (US) LLP                                          Brian Hoxie
                                                                     May 18, 2022
**VIA E-MAIL**







These photographs confirm that the numeric description on the raw material purchase

orders BW Fittings produced correspond to seamless pipe, not rough/stamping parts.  In other

words, the record evidence contradicts CBP's conclusion that "the numeric descriptions on raw

material invoices were actually for rough fittings."[61]

---

[61] Determination at 8.

The photographs the third party submitted to CBP confirm the substance of the site visit

report Norca submitted in response to a CBP RFI during the investigation and further corroborate

CBP's observations during its attaché's January 2020 site visit.  Indeed, the photographs

requested by CBP in this EAPA investigation demonstrate that BW Fittings had seamless pipe

that it used to produce CSBW fittings in Vietnam.  CBP's claim to the contrary is unsupported

by any evidence, much less the required substantial evidence.

**C.      The alleger submitted a response to Norca's request for administrative
         review that undermines both the allegations and CBP's evasion
         determination.**

On January 8, 2021, Allied submitted arguments to CBP responding to Norca's request for

administrative review.  Allied's response merely highlights three tangential findings by TRLED

without addressing the core findings on which TRLED based its evasion determination and without

addressing any of the substantive arguments Norca raised in its administrative review request.[62]

In providing comments, Allied did not dispute the following: (a) the fittings Norca purchased were

produced in Vietnam and thus not subject to the AD Order on fittings from China, (b) the AD

Order does not cover rough fittings from China, and (c) BW Fittings purchased and used seamless

pipe to produce finished fittings for Norca.  CBP should treat Allied's silence on these issues as

acknowledgement that its request to initiate the investigation was groundless and that TRLED's

evasion determination is not in accordance with law.

**D.      CBP deprived Norca of due process by basing the final determination on new
         allegations of perceived document discrepancies that CBP never provided an
         opportunity to explain—and compounds that violation by refusing to accept
         supplemental information from Norca and BW Fittings.**

The Federal Circuit recognizes that an importer, participating in an administrative

---

[62] Allied Response at 2-3.

proceeding, has a due process right to "notice and a meaningful opportunity to be heard."[63] Depriving Norca of due process was CBP's application of adverse inferences against Norca based on BW Fittings' responses—and the deficiencies and issues CBP identified in certain responses— and CBP's refusal, on remand, to accept supplemental information and documents addressing CBP's alleged concerns.

Regulations permit CBP to make adverse inferences during an EAPA investigation only under limited circumstances: if a party to the investigation "fails to cooperate and comply to the best of its ability with a request for information made by CBP . . . ."[64]  There was no such finding here against BW Fittings or Norca.  To the contrary, CBP's determination reflects that both parties cooperated and responded timely to CBP's requests for information and supplemental requests for information.[65]  Nor did CBP find that either BW Fittings or Norca failed to comply to the best of their respective abilities.  As such, the necessary predicate for applying adverse inferences against BW Fittings or Norca is absent.

Yet, applying adverse inferences is what CBP did in making its determination.  CBP specifically relied on supposed deficient responses by BW Fittings to justify application of adverse inferences to make an affirmative finding of evasion by Norca.  CBP, however, did not notify Norca or BW Fittings of what CBP deemed insufficient or deficient responses or provide either Norca or BW Fittings with an opportunity to redress any such evidentiary issues.  In short, CBP faults BW Fittings for not answering a question that CBP never asked.

In drawing adverse inferences, CBP violated Norca's right to a meaningful and fair

---

[63] *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed. Cir. 2012).
[64] 19 C.F.R. § 165.6(a).
[65] Determination at 3-4.

Squire Patton Boggs (US) LLP                                         Brian Hoxie
                                                                     May 18, 2022
**VIA E-MAIL**

proceeding.  Furthermore, CBP's failure to provide Norca (or BW Fittings) with notice of what

CBP considered to be deficient responses—and an opportunity to remedy or explain the

deficiency—renders CBP's evasion determination unsupported by substantial evidence and

otherwise contrary to law.[66]

> E.    **CBP improperly and unreasonably draws adverse inferences against Norca
>        based on alleged discrepancies and issues with certain information BW
>        Fittings provided during the investigation.**

CBP identifies various alleged "discrepancies and issues with the information on the record

of this investigation" arising from certain narrative responses and documents BW Fittings provided

CBP during the investigation.[67]  As noted, CBP cannot draw adverse inferences to support the

evasion determination because CBP did not provide BW Fittings an opportunity to remedy or

explain the issues CBP identified.    Regardless, the inferences CBP draws from the alleged

discrepancies are unreasonable as outlined below.[68]

CBP notes that sales contracts from BW Fittings to Norca include "fine print indicating

that transshipment was 'To Be Allowed.'"[69]  CBP did not ask Norca or BW Fittings to explain this

fine print and assumed there was only one explanation.  Although unstated, CPB apparently thinks

this demonstrates BW Fittings merely shipped covered merchandise from China to Norca through

---

[66] *Accord. Ta Chen Stainless Steel Pipe v. United States*, 23 C.I.T. 804 (1999); *see also Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*, 28 C.I.T. 1185, 1193-95 (2004) (noting that alleged deficiencies in submitted information that are only articulated upon the issuance of the Final Determination provide little basis from which to understand how to remedy the identified deficiencies before the conclusion of a proceeding, as well as little reason to seek out additional information to supplement the submitted data).
[67] Determination at 10.
[68] Norca is unable to address each discrepancy CBP identified because it would require providing an explanation from BW Fittings that CBP could have (and should have) sought during the investigation.  Regulations prohibit a party seeking administrative review from submitting new facts.  19 C.F.R. § 165.41(f).
[69] Determination at 10.

Squire Patton Boggs (US) LLP

**VIA E-MAIL**

Brian Hoxie
May 18, 2022

Vietnam.  This is an unreasonable interpretation.  The provision merely addresses permissible routing of finished CSBW fittings from BW Fittings to Norca; namely, Norca accepts that the container of finished CSBW fittings from BW Fittings may ship directly from the port of loading to the port of discharge or indirectly from the port of loading to the port of discharge via a transshipment port.  There is nothing nefarious about such a standard shipping line term being present in a sales contract involving container shipment via ocean transit.

CBP further contends that "raw material sales contracts and invoices with written descriptions for rough fittings submitted in BW Fittings' RFI response did not contain sufficient information for BW Fittings' raw material suppliers to fulfil the orders."  Even if true, CBP's finding is irrelevant.  There is no dispute that BW Fittings purchased rough parts.  And the use of such parts during production in Vietnam, as discussed, does not render the finished CSBW fittings at issue "covered merchandise."

CBP likewise contends "additional information must have been communicated between BW Fittings and Asia Piping that was not provided to CBP."[70]  To support its position, CBP highlights that "raw material invoices provided in response to CBP's request at the on-site visit contained more detail for the products than the same raw material invoice numbers submitted in BW Fittings' RFI response."  Again, CBP did not ask BW Fittings follow-up questions on this point or provide BW Fittings with the opportunity to explain.  Comparing the documents reveals that the raw material invoices BW Fittings produced in response to the RFI omitted two columns: "import code" and "import name."  The reasonable explanation is that the two columns—contained on the version provided to CBP during the on-site visit—were for internal purposes such that BW

---

[70] Determination at 10-11.

Fittings could prepare the necessary customs declarations.  The additional columns, moreover, do not communicate "additional information."  To the contrary, the information is either cumulative to the other columns (import name) or irrelevant to the supplier (import code).

CBP further claims that "BW Fittings' production records contain various discrepancies that cast doubt on their authenticity, as they do not appear to be representative of BW Fittings' actual production experience."[71]  Such a far-reaching conclusion is unwarranted.   CBP bases its criticism on a few isolated "discrepancies" found in the voluminous production records that BW Fittings produced during the investigation.  CBP, however, did not ask BW Fittings to explain the alleged discrepancies or otherwise provide BW Fittings with any opportunity to address the concerns.  It is improper for CBP to draw sweeping adverse inferences—and apparently reject the entirety of BW Fittings' production records—without providing notice and an opportunity to explain during the investigation.

There are, moreover, plausible explanations for what CBP decries as "discrepancies."  For example, BW Fittings likely has employees on hand on Sundays to perform inspections and sign-off on work performed.  CBP also faults the process flow cards from 2019 on which BW Fittings' employees signed off on cutting and forming processes during a time before BW Fittings said it had the ability to perform the first production stage.[72]   While CBP does not cite any specific process flow cards, BW Fittings' documents suggests that CBP may be misreading the date on the documents.  CBP also fails to recognize that the process flow cards from before September 2019, while containing a line for cutting and forming (no doubt anticipating expanding production

---

[71] *Id.* at 12.
[72] Determination at 12.

Brian Hoxie
May 18, 2022

capabilities), did not have those boxes checked or sign-off by an inspector.[73]  Finally, the raw material requisitions, as CBP concedes, shows cut pipe being withdrawn for production.[74]

CBP faults BW Fittings for not providing Chinese certificates of origin for raw materials it obtained.  While acknowledging a letter from BW Fittings stating Vietnam customs does not require certificates of origin for imported raw materials, CBP dismisses that statement as "not align{ing} with the thorough documentation that CBP reviewed from Vietnamese Customs for the arrival of the production equipment from China . . . ."[75]  CBP compares apples-to-oranges, and fails to acknowledge that Vietnam customs may not require certificates of origin for certain categories of imports, like raw materials.  CBP, of course, could have sought clarification from BW Fittings.  It did not, and thus cannot draw a negative inference now.  Indeed, Customs could have looked to Vietnam customs rules—namely, Circular 38/2018/TT-BTC dated April 20, 2018[76]—which confirm the explanation BW Fittings supplied to Norca.

CBP highlights Vietnam customs documents included with BW Fittings' production concerning equipment purchases that shows "the shipment of semi-finished seamless fittings from

---

[73] *Compare, e.g.* BW Fittings Ex. 16_20 at 23-51 (Aug. 2019 production) and BW Fittings Ex. 16_19 at 115-83 (Sept.-Oct. *2018 production) with, e.g.*, BW Fittings Ex. 16_24 at 147-50 (Oct. 2019 production) and BW Fittings Ex. 16_26 at 180-231 (Jan. 2020 production).

[74] Determination at 13.

[75] *Id.* at 11.

[76] Vietnamese Circular 38/2018/TT-BTC dated April 20, 2018, is available for download in Vietnamese at https://www.customs.gov.vn/Lists/VanBanPhapLuat/ViewDetails.aspx?ID=10666 (last accessed 14 Dec 2020).  While the specific circular is not available in English on the Vietnam Customs website, as part of a separate matter, the United States Department of Agriculture, Foreign Agricultural Services provided an unofficial translated version of this Circular. It is available at: https://apps.fas.usda.gov/newgainapi/api/report/downloadreportbyfilename?filename=Vietnam%20Customs%20Requires%20Certificate%20of%20Origin%20for%20Meat%20and%20Poultry%20_Hanoi_Vietnam_12-20-2018.pdf (last accessed 14 Dec 2020).

Brian Hoxie
May 18, 2022

AFI to BW Fittings in April 2018."[77]  This material does not support the evasion determination

because it concerns activity outside the period of investigation and is thus irrelevant.  Further, there

is no evidence that such materials were shipped to Norca.

CBP also draws adverse inferences against BW Fittings and Norca because it "identified

vast inconsistencies between the equipment purchase documentation provided in the Importers'

CF28 responses and BW Fittings' RFI response, which calls into question the veracity of the

information provided by BW Fittings."[78] Drawing such an adverse inference is improper because

CBP never asked BW Fittings (or Norca) for an explanation.  Notwithstanding CBP's failure to

comply with its own regulations (and Amendment 5 to the U.S. Constitution), the inconsistencies

CBP identifies do not support an adverse inference.  According to CBP, both the CF28 responses

and BW Fittings' RFI response included invoice numbers BWIMEQ-190001 through 190006, but

the invoice dates were different, the arrival date in Vietnam was different, and the equipment

identified were different.[79]  CBP also notes that BW Fittings produced documentation in its RFI

response for additional shipments of equipment not included with the CF28 response.[80]  Based on

this, CBP complains that it "cannot determine which set of documents is authentic."[81]

What CBP overlooks is that both sets of documents are authentic.  It is apparent from the

documentation—including Vietnam customs declarations, Vietnam customs clearances, and bills

of lading—that the same invoice numbers were used in 2018 and 2019, albeit, for different

machinery.  The equipment purchase records submitted with the RFI response, moreover, cover

---

[77] Determination at 12.
[78] *Id.* at 11.
[79] *Id.*
[80] *Id.* at 11-12.
[81] *Id.* at 12.

all the machinery BW Fittings identified in its RFI response.[82]  There is a plausible explanation.

CBP's RFI to BW Fittings requested BW "{d}escribe all the equipment used in the production of

CSBW pipe fittings" and "{p}rovide the original invoice(s), proof of payment(s), purchase order

and all bills of lading . . . for purchase of the equipment,"[83] *i.e.*, equipment used in production

(present tense), not equipment no longer used (past tense).  In responding to the CF28, an employee

from BW Fittings undoubtedly made a mistake and pulled the incorrect purchasing documents for

the CF28 responses, *i.e.*, documents for equipment not presently used in production.  Again, CBP

never noted this *post hoc* speculative concern and gave an opportunity to address.

CBP's drawing an adverse inference on this issue is particularly egregious given it asked

BW Fittings to provide certain clarifying information "{f}or each of the machines (count as of

April 30, 2020)," including date of acquisition/arrival to BW Fittings, seller of the machine, bill

of lading number, and date machine was first used in production.  CBP did not disclose that it

"identified vast inconsistencies" between the documents BW Fittings submitted in Exhibit 18 and

the documents BW Fittings submitted to the importers for the CF28 responses.  Having failed to

raise the issue with BW Fittings during the investigation, CBP cannot draw an adverse inference

in rendering its determination, particularly given BW Fittings cooperated throughout the

investigation.

Norca reiterates that due process and CBP's regulations mandated that Norca and BW

Fittings be apprised of deficiencies and issues CBP identifies and provided an opportunity to

remedy or explain.  CBP did neither and has prohibited Norca from providing explanations from

BW Fittings during this remand (indeed, it rejected the submission), thereby compounding the due

---

[82] *Compare* BW Fittings Ex. 17 and Ex. S9 *with* BW Fittings Ex. 18
[83] Feb. 14, 2020 Req. for Information to BW Fittings at 6.

Squire Patton Boggs (US) LLP

Brian Hoxie
May 18, 2022

**VIA E-MAIL**

process violation. Norca (and BW Fittings) remains willing and able to address the specific issues CBP identifies with BW Fittings' responses if CBP provides the opportunity to do so—and specifically requests that CBP provide that opportunity.

## IV.   CONCLUSION

For the reasons outlined in this submissions, Norca requests that CBP reverse its determination that Norca entered covered merchandise into the customs territory of the United States through evasion and terminate the investigation.


Sincerely,

Squire Patton Boggs (US) LLP

Jeremy W. Dutra

*Counsel for Norca Industrial Company, LLC*

**Vallacher, Bret R. (CIV)**

| | |
|---|---|
| **From:** | Koenig, Peter <peter.koenig@squirepb.com> |
| **Sent:** | Saturday, July 16, 2022 9:57 AM |
| **To:** | Vallacher, Bret R. (CIV); Steve Taronji |
| **Cc:** | Dutra, Jeremy W.; shae.weathersbee@cbp.dhs.gov |
| **Subject:** | [EXTERNAL] RE:  RE: 21-cv-00192-JCG Norca Industrial Company, LLC v. United States |

Respectfully, a reaction: from below, we are really talking 290 days (20 + 120 + 150).  My understanding is that is how long generally takes, as Commerce generally in practice fully extends the deadlines to the full amount permitted by its regulations.   The concern is that Commerce may feel pushed to rush things – i.e., respondents not given sufficient time to reply to any Commerce questions -- if Commerce not otherwise given 290 days from the start and feels pushed to accelerate, and what is really a full "do over" of the original EAPA investigation, as EAPA now admits doesn't even know if accused product even subject to antidumping, after a long investigation, to which we objected.  EAPA now wants Commerce to do a full "do over."  Best.

Peter Koenig, Squire Patton Boggs, Washington DC 202 669 1901
Counsel to Norca and IPPG

---

**From:** Vallacher, Bret R. (CIV) <Bret.R.Vallacher@usdoj.gov>
**Sent:** Wednesday, July 13, 2022 10:01 AM
**To:** Steve Taronji <Steve_Taronji@cit.uscourts.gov>
**Cc:** Koenig, Peter <peter.koenig@squirepb.com>; Dutra, Jeremy W. <jeremy.dutra@squirepb.com>; shae.weathersbee@cbp.dhs.gov
**Subject:** [EXT] RE: 21-cv-00192-JCG Norca Industrial Company, LLC v. United States

Hi Mr. Taronji,

I apologize for the delay – I'm in trial in Alaska this week, so between the work demands and the time-zone difference, I can only turn to other matters around 10PM Eastern, which has made coordination with the agency and my reviewer a bit more time-consuming.


My understanding is that Commerce will "[i]nitiate a covered merchandise inquiry and publish a notice of initiation in the federal register" **within 20 days** after receiving a scope referral.  *See* 19 CFR § 351.227(b).  If Commerce determines the referral is inadequate, CBP will work with Commerce promptly to answer any questions – but CBP does not expect that process to take any longer than two weeks from the day that this Court approves the referral plan (if the Court chooses to do so).  Then Commerce "shall issue a final covered merchandise determination **within 120 days** from the date of publication of the notice of initiation." *See* 19 CFR § 351.227(c)(1).  Within that time, Commerce will allow interest parties to submit comment and factual information. *See* 19 CFR § 351.227(d).  At the absolute latest, Commerce can extend its deadline "by no more than 150 days" and only if "good cause exists to warrant an extension" – such as if Commerce needs to follow-up with the interested parties regarding responses to a questionnaires and that process is taking a while. *See* 19 CFR § 351.227(c)(2).

We believe that a reply to Norca/IPPG's opposition brief would provide useful information to the Court as it relates to the arguments made by Norca/IPPG, and are more than happy to file one if the Court believes it would be of assistance.

Thanks,

Bret

---

**From:** Steve Taronji <Steve_Taronji@cit.uscourts.gov>
**Sent:** Monday, July 11, 2022 4:20 PM
**To:** Vallacher, Bret R. (CIV) <Bret.R.Vallacher@usdoj.gov>
**Cc:** Koenig, Peter <peter.koenig@squirepb.com>; Dutra, Jeremy W. <jeremy.dutra@squirepb.com>; shae.weathersbee@cbp.dhs.gov
**Subject:** 21-cv-00192-JCG Norca Industrial Company, LLC v. United States

Good afternoon Mr. Vallacher,

In reference to the above mentioned case and the motion below.  The Court would like the Government to state approximately how long it will take CBP to complete its covered merchandise referral?

Thank you,

**Steve Taronji**

**Case Manager**

**United States Court of International Trade**

**One Federal Plaza, Room 397**

New York, NY 10278

Phone (212) 264-1611

Fax (212) 264-1085

steve_taronji@cit.uscourts.gov

---

**From:** cmecf_notify@cit.uscourts.gov <cmecf_notify@cit.uscourts.gov>
**Sent:** Friday, July 1, 2022 5:30 PM
**Subject:** Activity in Case 1:21-cv-00192-JCG Norca Industrial Company, LLC v. United States Motion to Stay

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. Court of International Trade

### LIVE Database

## Notice of Electronic Filing

The following transaction was entered by Vallacher, Bret on 7/1/2022 at 5:29 PM and filed on 7/1/2022

| | |
|---|---|
| **Case Name:** | Norca Industrial Company, LLC v. United States |
| **Case Number:** | 1:21-cv-00192-JCG |
| **Filer:** | United States |
| **Document Number:** | 27 |

**Docket Text:**
**Motion to stay *proceedings for the purpose of covered merchandise referral to Commerce*. Responses due by 7/22/2022. Filed by Bret R. Vallacher of U.S. Department of Justice on behalf of United States.(Vallacher, Bret)**

**1:21-cv-00192-JCG Notice has been electronically mailed to:**

Bret R. Vallacher     bret.r.vallacher@usdoj.gov

Jeremy William Dutra     jeremy.dutra@squirepb.com, vickie.carter@squirepb.com

Peter J. Koenig      peter.koenig@squirepb.com, pkoenig@ssd.com

Shae Weathersbee      shae.weathersbee@cbp.dhs.gov

**1:21-cv-00192-JCG Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Norca Stay Motion.pdf
**Electronic document Stamp:**
[STAMP citStamp_ID=992012590 [Date=7/1/2022] [FileNumber=1135205-0] [a
8df27e022fe614438534bd281d8bc3b34de88f6b5bba2bffba87c2a86f4d2aa3389675
20e6c4b01c98b59ddc838f59f138aecc5a053d7d1f1a42aba119da6e2]]

--------------------------------------------------------------------
45 Offices in 20 Countries

This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person.

For information about how Squire Patton Boggs processes UK and EU personal data that is subject to the requirements of applicable data protection laws, please see our Privacy Notice regarding the processing of UK and EU personal data about clients and other business contacts at www.squirepattonboggs.com.

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities. Please visit www.squirepattonboggs.com for more information.

#US
--------------------------------------------------------------------